IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OPTIONMONSTER HOLDINGS, INC., <br> Plaintiff <br><br> v. <br><br> DELICIOUS MONSTER, LLC, <br> Defendant. | Case No. 08-c-00894 <br><br> Honorable Ronald A. Guzman <br><br> Magistrate Judge Brown |

**DEFENDANT'S MOTION FOR ORDER OF DISMISSAL**

Defendant DELICIOUS MONSTER, LLC, by its undersigned counsel, hereby moves to dismiss the Complaint based upon the following grounds:

I.   **INTRODUCTION AND RELIEF REQUESTED**

Defendant Delicious Monster, LLC ("Delicious Monster") requests that the Court dismiss this lawsuit and direct the parties to litigate their differences in the United States District Court for the Western District of Washington pursuant to *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 747 (7th Cir. 1987) and its progeny. Plaintiff OptionMonster Holdings, Inc. ("OptionMonster") should never have filed this lawsuit.

Seventh Circuit law is clear that when faced with a cease and desist letter, a potential defendant like OptionMonster should not run for the nearest court house and attempt to hijack venue by filing a declaratory judgment action, and in the process become a plaintiff. Instead, when faced with the opportunity to attempt to resolve a situation short of litigation, a

1

party should attempt to do so in good faith. The problem with OptionMonster's behavior is underscored by the fact that at the time it filed this case, Delicious Monster was in the process of responding to a request from OptionMonster for additional information. However, instead of waiting to hear back from Delicious Monster, OptionMonster decided to improperly manipulate the forum of this litigation. Its actions were improper, and directly contrary to the purposes of the Declaratory Judgment Act, 28 U.S.C. §2201.

Delicious Monster did everything it could to resolve this case without litigation, and thereby avoid straining the resources of the federal court system. OptionMonster did the opposite. OptionMonster must now be told that it is properly a defendant, and that its attempts to avoid becoming a defendant were improper. The only way to do so is to dismiss this case, as numerous courts in this circuit have done when faced with identical facts.

## II.    STATEMENT OF FACTS

### A.    General Background

Plaintiff Delicious Monster is based in Seattle, Washington. It was founded in March 2004 and designs and sells computer software for creating a searchable electronic catalogue of information, which may be downloaded from a global computer network through its website, www.delicious-monster.com. *Declaration of William J. Shipley*, ¶3. As the website explains, once a customer purchases Delicious Monster's software, she can:

> Get [her] Mac, a webcam, and Delicious Library and rediscover your home library. Just point any FireWire digital video camera, like an Apple iSight®, at the barcode on the back of any book, movie, music, or video game. Delicious Library does the rest. The barcode is scanned and within seconds the item's cover appears on your digital shelves filled with tons of in-depth information downloaded from one of six different web sources from around the world.

*Shipley Decl.*, Ex. A.  Then:

> Once your whole library is cataloged, you can find and use your items like never before. Browse, sort, and search through your digital shelves. Sync your cataloged library onto your iPod or print a color catalog and take it with you. Find and purchase new items using Delicious Library's personalized recommendations. Keep track of the items your friends are borrowing using Delicious Library's loan management system, which integrates with Apple's Address Book and iCal.

*Shipley Decl.*, Ex. A.

Every page of Delicious Monster's website features a creature logo (the "DM Logo") that was custom created in 2004 specifically for Delicious Monster by Christopher Masciocchi, a famous graphic artist. Delicious Monster owns all trademark and copyright rights to the DM Logo. Delicious Monster has continuously used this logo to identify its products and services since 2004. *Shipley Decl.*, ¶5.

OptionMonster was founded in August 2005 and uses its website (www.optionmonster.com) to provide information relating to the financial services industry:

> optionMONSTER™ is a leading provider of market intelligence and analytical commentary on the options markets.  Our vision is to empower retail traders by narrowing the information gap between individuals and professionals.  Founded in 2006 and based in Chicago, the heart of the options industry, optionMONSTER™'s unique perspective marries high-tech analysis of the day's market activity to the traditional floor trader's savvy.  We deliver an online suite of subscription products, educational resources, and free content to our base of paying clients and registered users, and specialize in spotting unusual trading opportunities before others have even spotted the trend.

*Declaration of Rebecca S. Ashbaugh*, Ex. A.

A logo that is a copy of Delicious Monster's DM Logo and/or is substantially similar to Delicious Monster's DM Logo appears on OptionMonster's website. *Ashbaugh Decl.*, Ex.

3

B.  OptionMonster is and has been using that logo to identify its goods and services in commerce without Delicious Monster's permission since at least July 9, 2006.

B.  **Delicious Monster Learned OptionMonster is Infringing Its Trademark Rights and Copyright Rights and Sent Cease and Desist Correspondence Hoping to Resolve the Matter Without Litigation**

On November 30, 2007, Delicious Monster received an e-mail which for the first time brought to its attention OptionMonster's infringing logo. *Shipley Decl.*, ¶6 and Ex. B. Delicious Monster investigated the situation, and on December 2, 2007 notified OptionMonster via e-mail[1] that it was infringing Delicious Monster's trademark rights and copyright rights and requested that it cease doing so immediately. *Shipley Decl.*, Ex. C. The e-mail pointed out:

> Here are just *some* of the elements of our copyrighted logo that have been copied:
>
> - You have the capital letters "O" and "M" stacked vertically to make a little monster, just as we did with "D" and "M".
> - You have the "M" making up the body of the creature, with each leg of the M representing a leg of the monster.
> - You have horns on your monster.
> - Your horns are simple curved horns that taper to a point.
> - Your horns point inwards.
> - Your horns are separated from the head of the monster with whitespace.
> - The top of the "M" is clipped by the other letter, forming a smooth upward curve.
> - You have three claws on each foot.
> - The claws are perfect triangles.
> - The claws are pointing down.
> - The claws are separate from the feet.
> - The creature has a little mouth, with a single element of interest inside of it (a tooth, for you, a tongue for us).
> - The mouth detail is pointing upwards.
> - The mouth detail is on the right side.
> - The mouth detail is represented by extending negative space.

---

[1] Being unfamiliar with OptionMonster, Delicious Monster was unsure of exactly who to write to, and as such utilized all e-mail addresses it was able to glean from OptionMonster's website. *Shipley Decl.*, ¶7.

- The logo is largely one color, and uses contrast with the background to show off most elements. (In fact, the only variant from this is the only new thing your artist added, which is the eyes, which are white-on-grey.)

Basically the only thing that's changed in your version is that the eyes are moved up, there are two eyes, the tongue is a tooth, the eye hole becomes the mouth, and the "D" is now an "O".

The fact that the list of differences is so much shorter than the list of similarities (which I don't even claim is complete) should speak volumes.

*Shipley Decl.*, Ex. C.

The e-mail generated the following response only:

Please take note that I am a "contributing editor" to the OptionMonster web site. I am not now nor have I ever been an employee, shareholder or decision-maker of any entity that might be a party to your claim.

As such, please remove me from your distribution list regarding this matter.

Sincerely,

Rod David

*Shipley Decl.*, ¶8 and Ex. D.

C.   **OptionMonster Responded by Requesting More Information, Which Delicious Monster Was Willing to Provide**

After receiving no substantive response from OptionMonster, Delicious Monster had its counsel send a letter to OptionMonster's registered agent Tim Lavender of Kelley Drye & Warren demanding that OptionMonster cease and desist its infringing activities on February 1, 2008. The letter explained and demanded, in relevant part:

OptionMONSTER is presently and has been infringing my client's legal rights to its logo. The creature used by optionMONSTER is likely to cause confusion among consumers and the image is nearly identical to that of Delicious Monster's fanciful logo. Making minor

changes or additions of little substance to a preexisting work does not qualify the work as a new creation.

On behalf of Delicious Monster, I demand that you immediately remove the offending mark from your website and all corporate materials and cease using it to represent your company in any way. Please send me written confirmation that:

(1) You have removed the creature logo from your website;
(2) You have stopped using the creature logo, or any derivative thereof, in association with any of your goods or services; and
(3) You will not at any time in the future use the creature logo, or any derivative thereof, in association with any of your goods or services.

We look forward to resolving this dispute amicably and without resort to further legal action. However, if I have not received your written confirmation by February 6, 2008, Delicious Monster may be forced to file a lawsuit against you for copyright and trademark infringement and ask for its damages. I look forward to your timely response.

*Ashbaugh Decl.*, Ex. B.

On Wednesday, February 6, 2008, after receiving a voice mail from Mr. Lavender, Ms. Ashbaugh called Mr. Lavender and discussed the situation. *Ashbaugh Decl.*, ¶5. At no time during the conversation did Mr. Lavender ever mention filing a lawsuit. Ms. Ashbaugh then sent Mr. Lavender a follow-up e-mail, in which she reiterated Delicious Monster's hope that this matter could be settled without litigation:

My client is very invested in its creature as it has spent substantial time and money developing this logo. Delicious Monster is a very famous company in the software and internet community and uses the creature logo to identify its services and products. The logo is very important to my client and it is committed to defending and protecting its rights. I look forward to your response and hope to resolve these issues as soon as possible. If you would like to discuss any of these issues further, please give me a call.

*Ashbaugh Decl.*, Ex. C.

6

On Thursday, February 7, 2008, Caroline C. Plater, also an attorney at Kelley Drye & Warren, sent Ms. Ashbaugh a letter requesting several categories of information, and concluding with:

> We look forward to resolving this dispute amicably. However, we are unable to provide a thorough evaluation of your claims without the further information requested herein. Please feel free to contact me or Mr. Lavender if you wish to discuss this matter further.

*Ashbaugh Decl.*, Ex. D.

The next day Ms. Plater left Ms. Ashbaugh a voicemail to follow-up on her letter and touch base as to the timing of a response. At no point during the voicemail or at *any* other time did Ms. Plater in any way mention filing a lawsuit. *Ashbaugh Decl.*, ¶7.

**D.    Before Delicious Monster Could Provide A Response, OptionMonster Filed This Lawsuit Without Warning**

On Monday, February 12, before Delicious Monster even had time to assemble the information requested by OptionMonster, this lawsuit was filed, and Ms. Plater e-mailed a copy of the pleadings to Ms. Ashbaugh. *Ashbaugh Decl.*, Ex. E. Delicious Monster, realizing this matter could not be settled without litigation, commenced a lawsuit for copyright and trademark infringement on February 22 in the United States District Court for the Western District of Washington, where it is based. *Ashbaugh Decl.*, ¶9 and Ex. F.

### III.    ISSUES PRESENTED

Whether the Court should decline its discretion to hear this case given that OptionMonster's actions in rushing to file a lawsuit under the federal Declaratory Judgment Act violate well established Seventh Circuit law prohibiting actions that: (1) manipulate forum; and (2) fail to attempt to preserve judicial economy?

IV.     EVIDENCE RELIED UPON

Declarations of William J. Shipley and Rebecca S. Ashbaugh and attached exhibits together with the pleadings and files of this case.

V.      LEGAL ARGUMENT

A.      This Court Has the Discretion to Decline to Hear This Case

"It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 747 (7th Cir. 1987) (citing, *inter alia*, *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 494 (1942)).  In fact, as the Seventh Circuit Court of Appeals held in affirming the district court's dismissal of a case nearly identical to this one in its *Tempco* opinion:

> Thus, Tempco's assertions that "an actual controversy existed" at the time the demand by Omega was made and refused are largely beside the point.  All that means is that the district court had the *power* to hear the suit, under the declaratory judgment statute and Article III.  The issue we must determine is whether that discretion which the district court retained to decline to hear Tempco's declaratory judgment suit was properly exercised in this case.

*Tempco*, 819 F.2d at 747.

B.      **The Declaratory Judgment Act Was Not Intended to Be Used To Forum Shop or Ignore the Scarce Nature of Judicial Resources as OptionMonster Has**

Courts in this circuit have issued several guidelines for district courts to consider when determining whether to dismiss a declaratory relief suit.  Initially, courts "have declined to follow the first-to-file rule where, as here, the first-filed action is initiated in an apparent attempt to preempt anticipated litigation and deprive a party of its choice of forum."

8

*Patton Electric Co. v. Rampart Air, Inc.*, 777 F. Supp. 704, 708 (N.D. Ind. 1991). The Seventh Circuit Court of Appeals similarly observed in its *Tempco* opinion:

> This circuit has never adhered to a rigid "first to file" rule. *See Tamari*, 565 F.2d at 1203; *Chicago Furniture Forwarding Co. v. Bowles*, 161 F.2d 411, 412 (7th Cir. 1947). We decline Tempco's invitation, based on *Crosley Corp. v. Westinghouse Electric & Manufacturing Co.*, 130 F.2d 474 (3d Cir.), *cert. denied*, 317 U.S. 681, 63 S. Ct. 202, 87 L. Ed. 546, 55 U.S.P.Q. (BNA) 494 (1942), to adopt such a rule here. *As we have noted before, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum."* *American Automobile Insurance*, 103 F.2d at 617. *"The federal declaratory judgment is not a prize to the winner of the race to the courthouse."* *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n.12, 91 S. Ct. 674, 694, 27 L. Ed. 2d 701 (1971) (Brennan, J., dissenting)), *cert. denied*, 440 U.S. 908, 99 S. Ct. 1215, 59 L. Ed. 2d 455 (1979).
>
> Our approach is consistent with that followed in similar cases elsewhere. *See American Greiner Electronic, Inc. v. Establissements Henry-Le Paute, S.A.*, 174 F. Supp. 918 (D.D.C. 1959) (declaratory judgment action brought a few days prior to patent infringement action dismissed); *Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 135 F. Supp. 505 (S.D. N.Y. 1955) (declaratory judgment action against licensee seeking declaration that patent was invalid dismissed, where patentee had filed an infringement action against declaratory judgment plaintiff in another district fifteen days later). *Technical Tape* also involved the failure to join the patentee, an indispensable party, but *we could not agree more with the court's observation that "the court is not called upon merely to say which side won the hundred yard dash to some courtroom."* 135 F. Supp. at 509.

*Tempco*, 819 F.2d at 750 (emphasis added).[2]

---

[2]   *See also Associated Mills, Inc. v. Regina Co.*, 675 F. Supp. 446, 448 (N.D. Ill. 1987), in which the court held:

> Finally, in this Court's opinion, AMI's conduct in filing this declaratory judgment action amounted to nothing more than a preemptive strike. AMI should not be rewarded for winning the race to the courthouse. Nor should it be permitted to distort the purpose of a declaratory judgment by using it as a vehicle to secure a forum of its own choosing. Accordingly, this Court denies AMI's emergency motion for a temporary restraining order and, in view of the pending New Jersey action, dismisses this action.

Both the Seventh Circuit Court of Appeals and other courts in this district have explained that declaratory relief suits, like this one, that are filed in an obvious attempt to manipulate the forum of a lawsuit should be dismissed:

> Dismissal of a declaratory action is proper when, as a result of the pendency of another suit, the suit for declaratory relief will serve no useful purpose. *See Tempco*, 819 F.2d at 747-49. The federal declaratory judgment is not a prize to the winner of the race to the courthouse. *Tempco*, 819 F.2d at 750. This rule applies to declaratory judgment actions designed to preempt not only infringement suits but other lawsuits as well. *Natural Gas*, 750 F. Supp. at 314. When the accused party has not been unfairly deprived of an opportunity to adjudicate its rights, a declaratory judgment is unnecessary. *Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. 1998) (*Eli's Chicago Finest*).

*Weber-Stephen Prods. Co. v. Gardena Norge A/S*, 2004 U.S. Dist. LEXIS 2072, at **4-5 (N.D. Ill. Feb. 12, 2004). Put succinctly, "district courts should decline to hear declaratory judgment actions that have been filed in an attempt to manipulate the judicial process." *N. Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 647 (7th Cir. 1998) (citing *Tempco*, 819 F.2d at 750).

Courts also disfavor lawsuits like this one because they eliminate the possibility of matters being settled short of litigation, which ensures that judicial resources are further consumed:

> Allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum. *Eli's Chicago Finest*, 23 F. Supp. 2d at 909. **Furthermore, prohibiting a race to the courthouse encourages settlement and discourages costly duplicate litigation.** *Eli's Chicago Finest*, 23 F. Supp.2d at 909. **A potential defendant should not respond to accusations of a potential plaintiff by rapidly bringing a declaratory judgment suit in hopes of securing a favorable forum.** *Eli's Chicago Finest*, 23 F. Supp.2d at 909.

*Weber-Stephen Prods. Co. v. Gardena Norge A/S*, 2004 U.S. Dist. LEXIS 2072, at **5-6 (N.D. Ill. February 12, 2004) (emphasis added); *see also Coalsales II, LLC v. Gulf Power Co.*, 2007 U.S. Dist. LEXIS 12593, at *22-23 (S.D. Ill. February 23, 2007) ("[B]ecause federal courts must act with prudence to preserve judicial economy, this Court, in its discretion, hereby dismisses Plaintiff's Complaint for declaratory relief, finding Defendant's suit obviates the need for the declaratory judgment Plaintiff seeks.").

As a result:

> [A] declaratory judgment suit with the express purpose of wresting the choice of forum from the 'natural' plaintiff is generally dismissed, whereby the case can then proceed in the usual way. *M Credit, Inc. v. Cadlerock, L.L.C.*, 2003 U.S. Dist. LEXIS 13319, 2003 WL 21800017 (N.D. Ill. 2003).

*Weber-Stephen Prods. Co.*, 2004 U.S. Dist. LEXIS 2072, at **4-5.

C.  **Numerous Cases Across the Seventh Circuit Have Been Dismissed Where, as Here, a Party Facing a Possible Lawsuit Ran Out And Filed a Declaratory Judgment Lawsuit Without Warning the Other Side Like OptionMonster Did**

Application of the above principles to this case mandates that this matter be dismissed. In sum, where a party receives a demand letter, and in anticipation of litigation files a declaratory relief suit in a forum of its choosing before attempting to resolve the matter short of litigation, the lawsuit is properly dismissed where the injured party files suit for infringement. A case from the Northern District of Illinois is instructive:

> On June 26, 1998, counsel for Defendant sent a cease and desist letter to Eli's protesting Eli's alleged use of the dessert designations: "White Chocolate Raspberry Truffle Cheesecake," and "Triple Chocolate Truffle." The letter requested that: (1) Plaintiff cease using the designations, and (2) Plaintiff notify Defendant of Plaintiff's intent to comply within ten days. The letter further indicated that should Plaintiff fail to communicate an intent to comply within ten days, Defendant was prepared to take legal action.
>
> On July 2, 1998, six days after receiving Defendant's letter, and

11

without first responding to Defendant, Plaintiff filed suit under the Lanham Act 15 U.S.C. §§ 1121-1125(a). Plaintiff asked this Court for a declaratory judgment finding that Plaintiff's use of the contested designation did not interfere with Defendant's trademark rights. Next, prior to officially serving Defendant, Plaintiff sent defendant a letter enclosing a copy of the complaint and expressing an interest in "opening a dialogue" with Defendant. Defendant was then properly served with notice of this action.

On July 7, 1998, Defendant filed a trademark infringement suit against Plaintiff in the United States District Court for the Central District of California. It is undisputed that the California suit concerns the same facts and issues as those presented here, and is essentially a "mirror image" of the action pending before this Court. On July 14, 1998, Defendant moved to dismiss Plaintiff's declaratory judgment action. The parties have stipulated and the United States District Court for the Central District of California has granted a stay of those proceedings pending a ruling on the motion to dismiss currently before this Court.

*Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 907-08 (N.D. Ill. 1998) (footnote omitted).

In dismissing the case, and directing the parties to litigate in California, the court observed:

> This Court recognizes two significant reasons to dismiss a declaratory action brought solely in anticipation of an infringement suit. First, allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum. *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.*, 10 F.3d 425 at 431 (7th Cir. 1993), *Publications International Ltd. v. McRae*, 953 F. Supp. 223 (N.D. Ill. 1996). Second, prohibiting a "race to the courthouse," encourages settlement and discourages costly duplicate litigation. *See, Leaf, Inc. v. Clay White Associates, Inc.*, 1996 U.S. Dist. LEXIS 14742, 1996 WL 5880876 (N.D. Ill.). Here, the second rationale is particularly compelling. Rather than contacting Defendant for the purpose of negotiation, Plaintiff responded to Defendant's accusation of trademark infringement by rapidly bringing suit in hopes of securing a favorable forum. If the Court were to allow such maneuvering, litigants would have no alternative but to quickly file suits in the forum of their choice. Delay caused by a good faith effort at negotiation could deprive a litigant of a favorable venue. Such an incentive system would be highly inefficient.

*Eli's Chicago Finest*, 23 F. Supp. 2d at 909.

Here, although OptionMonster did contact Delicious Monster, it filed suit before Delicious Monster could even respond. Such actions were a ploy to buy time while a complaint was filed, and violated the dictates of Seventh Circuit law.

Many other cases with nearly identical fact patterns have also resulted in declaratory judgment suits being dismissed so that infringement case can proceed. *See, e.g., Tempco*, 819 F.2d at 747; *Natural Gas Pipeline Co. v. Union Pacific Resources Co.*, 750 F. Supp. 311, 315 (N.D. Ill. 1990) ("Potential plaintiffs should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint."[3]); *Associated Mills*, 675 F. Supp. at 448 ("AMI filed this declaratory judgment action the day after it received a letter from Regina demanding that AMI cease infringement of Regina's copyright. Twelve days later, Regina filed its infringement action in New Jersey. As in *Tempco*, Regina's filing of an infringement action in New Jersey obviated the need for a declaratory judgment in this case.").

OptionMonster did exactly what courts in this circuit say not to do. It responded to a letter alleging infringement not by engaging in a dialogue that would hopefully avoid litigation, but instead ran to the courthouse as fast as it possibly could, in a transparent attempt to preempt an infringement suit and force venue in Chicago instead of Seattle. That is precisely the kind of conduct long prohibited. The only remedy is to dismiss this case, and

---

[3] Quoting *Inland Steel v. Van Leer*, 1990 U.S. Dist. LEXIS 6565 (N.D. Ill. 1990) (quoting *Columbia Pictures Industries, Inc. v. Schneider*, 435 F. Supp. 742, 747-48 (S.D. N.Y. 1977)).

direct the parties to litigate in the infringement suit Delicious Monster filed in the United States District Court for the Western District of Washington.

## VI.    CONCLUSION

This case should be dismissed. Delicious Monster at all times conducted itself in accordance with the policies established by this Circuit. In contrast, OptionMonster flouted such dictates, which have been established over the last twenty years. Such actions must not be condoned. This case must be dismissed, and the parties directed to litigate with Delicious Monster acting as a plaintiff proving infringement.

Dated this 14th day of March, 2008.

           Respectfully submitted,

           **DELICIOUS MONSTER, LLC**

           By: /s/ Steven L. Katz
              One of its attorneys

Steven L. Katz
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, IL 60601
(312) 245-7500

Of Counsel:

Mark Rosencrantz
Stanislaw Ashbaugh
Columbia Center
701 Fifth Avenue, Suite 4400
Seattle, WA 98104
(206) 386-5900

Attorneys for Defendant

N:\SYS02\11055\Lit\0007 - Motion to dismiss.doc