IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OPTIONMONSTER HOLDINGS, INC., Plaintiff | ) ) ) ) |
| v. | ) ) Case No. 08-c-00894 |
| DELICIOUS MONSTER, LLC, Defendant. | ) ) Honorable Ronald A. Guzman ) ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION FOR ORDER OF DISMISSAL**

Defendant DELICIOUS MONSTER, LLC, by its undersigned counsel, submits this reply in support of its Motion for Order of Dismissal.

### I. INTRODUCTION

The parties agree that this Court could properly decline to hear this case. The real question to be resolved is whether the Court should do so. For a plethora of reasons, this matter should be dismissed, and the parties ordered to litigate this matter in the Western District of Washington.

Initially, plaintiff OptionMonster's opposition[1] engages in a gross distortion of what happened between the parties. The simple reality, which is borne out by contemporaneous documents, is that OptionMonster did the following:

- Ignored a demand letter sent directly to it by Delicious Monster attempting to settle this case without the need to involve attorneys;

---

[1] At 17 pages, OptionMonster's opposition brief exceeded the permissible page limit set by LR 7.1, but did not request leave to file an overlength brief, or contain a "table of contents with the pages noted and a table of cases" as required by the rule. Accordingly, Delicious Monster moves that OptionMonster's opposition brief be "stricken by the court" in accordance with LR 7.1.

1

- After receiving a demand letter from Delicious Monster's attorneys, had its lawyers respond by requesting additional documentation; and

- While Delicious Monster's attorneys were gathering the documentation, and with full knowledge they were doing so, OptionMonster's attorneys without warning filed this suit approximately two business days after requesting the information, and before Delicious Monster's attorneys finished their task.

The above facts, standing alone, illustrate clearly that OptionMonster filed this case in bad faith, without any intention of attempting to negotiate a resolution, for the sole purpose of securing venue in this Court instead of the Western District of Washington. OptionMonster's actions following the filing of this suit, and in opposing this motion, have underscored that reality. OptionMonster's actions in this case are a textbook case of a party claiming it wants to negotiate, while at the same time racing to the nearest courthouse. This Court should recognize OptionMonster's actions for what they are, and dismiss this case.

Equally problematic is the fact that OptionMonster's opposition failed to discuss a single case cited in Delicious Monster's motion. Such failure is unsurprising, because OptionMonster's strategy was to shift the Court's attention away from the plethora of cases that contain directly analogous facts, to another group of cases that involve parties operating in good faith. However, Seventh Circuit law explicitly recognizes that wrongful behavior like theirs should be rejected, and that *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.* does not apply here.

Delicious Monster has at all stages of this matter conducted itself the right way. It tried to settle this case without involving lawyers. When that did not work, it retained counsel, and tried to resolve things without filing a lawsuit, and unnecessarily burdening the federal judiciary. In contrast, OptionMonster immediately, and in bad faith given what it told Delicious Monster at the time, ran out and filed this matter in a clear and obvious attempt to

manipulate the appropriate forum. OptionMonster must not be rewarded for its efforts, and this case should be dismissed.

## II.  SUPPLEMENTAL STATEMENT OF FACTS

OptionMonster's opposition engages in factual distortions, and where that will not work, it simply ignores what happened. Delicious Monster will point out some of the more egregious examples.

A.  **The Declaration of Caroline C. Plater Is at Best Misleading, as It Wrongly Attempts to Portray OptionMonster as a Party Who Engaged in Good-Faith Settlement Negotiations; the Documentary Record Illustrates That It Did Not**

The Declaration of OptionMonster counsel Caroline Plater wrongly paints a picture of this lawsuit being caused by Delicious Monster not participating in settlement efforts in good faith. As Ms. Plater is well aware, that is untrue. In fact, it is OptionMonster who acted in bad faith, not Delicious Monster.

Initially, Ms. Plater alleges in paragraph 8 of her declaration that: "Counsel for Delicious Monster, Rebecca Ashbaugh, has previously indicated in an e-mail dated February 6, 2008 to Mr. Lavender that Delicious Monster was not interested in OptionMonster's response if it included a request for further documents or defenses to the infringement claims." *Declaration of Caroline C. Plater*, ¶8. In truth, what Ms. Ashbaugh wrote in her e-mail is:

> I'm assuming your email was sent before our telephone conversation of today's date. During our conversation, you indicated that you will be sending me a letter tomorrow in response to my initial letter regarding optionMonster's trademark and copyright infringement. *I would hope that your letter does not simply request information from my client, but rather responds to my letter and provides the requested written confirmation or sets forth the grounds, if any, on which optionMonster is defending its infringement.*

\* \* \*

> My client is very invested in its creature as it has spent substantial time and money developing this logo. Delicious Monster is a very famous company in the software and internet community and uses the creature logo to identify its services and products. The logo is very important to my client and it is committed to defending and protecting its rights. ***I look forward to your response and hope to resolve these issues as soon as possible.*** If you would like to discuss any of these issues further, please give me a call.

*Reply Declaration of Rebecca S. Ashbaugh*, Ex. A (emphasis added).

To be clear, what Ms. Ashbaugh clearly explained to Mr. Lavender on the telephone on Wednesday, February 6, 2008 and again that day in a follow-up e-mail was:

- Delicious Monster wanted to resolve the issues between the parties without the need for litigation; and

- Delicious Monster was willing to provide OptionMonster with information, but as part of actively working in good faith toward settling the claims OptionMonster needed to do more than simply request information. It also needed to provide a substantive response.

*Ashbaugh Reply Decl.*, ¶4; *Declaration of Ana M. Popp*, ¶3. Those communications were exactly in line with Ms. Ashbaugh's initial letter to Mr. Lavender, in which she wrote in the letter's final paragraph: "We look forward to resolving this dispute amicably and without resort to further litigation." *Ashbaugh Reply Decl.*, Ex. B.

The next day, on Thursday, February 7, 2008, Ms. Plater sent Ms. Ashbaugh a letter in which she both outlined OptionMonster's analysis of the case and requested additional information she claimed was needed for further analysis. *Plater Decl.*, Ex. C. This was exactly what Ms. Ashbaugh expected, a letter containing substantive information that appeared to be designed to further settlement discussions. Ms. Ashbaugh then began the process of gathering the information Ms. Plater requested. *Ashbaugh Reply Decl.*, ¶9.

At this point, Ms. Ashbaugh believed that the parties were committed to trying to settle this case without the need for litigation. *Ashbaugh Reply Decl.*, ¶10. Moreover, during her February 6 telephone call with Mr. Lavender, she not only provided Mr. Lavender with some additional information, but also committed to reviewing the follow-up letter Mr. Lavender told her would be forthcoming (which turned out to be Ms. Plater's February 7 letter) and providing whatever requested information she could obtain. *Ashbaugh Reply Decl.*, ¶11.

Once she received Ms. Plater's letter, on Friday, February 8, 2008 Ms. Ashbaugh began the task of assembling what Ms. Plater requested. However, before Ms. Ashbaugh had a chance to respond to the letter or return Ms. Plater's call, OptionMonster filed this lawsuit on the morning of Tuesday, February 12. *Ashbaugh Reply Decl.*, ¶12. Thus, OptionMonster sent a letter on Thursday requesting multiple categories of documents and information, spent Friday, February 8 and Monday, February 11 drafting its complaint, and then filed this lawsuit the following morning.

At that point, it became clear to Delicious Monster that Ms. Plater's letter was nothing more than a ruse to buy time to prepare and file the complaint in this case. Accordingly, given OptionMonster's bad faith, at that point Ms. Ashbaugh shifted her attention to preparing and filing Delicious Monster's lawsuit in the Western District of Washington.[2] *Ashbaugh Reply Decl.*, ¶13.

Finally, Ms. Ashbaugh explained all of this to Ms. Plater in a February 26, 2008 e-mail, in which she wrote:

> Additionally, contrary to your prior assertion, you did not reach out to me in an effort to resolve this matter. Rather, you sent me a letter in response to my cease and demand letter to Mr. Lavender in which you

---

[2] The complaint in that case was served on April 11, 2008. *Declaration of Mark Rosencrantz*, Ex. A.

5

> disputed and denied that OptionMonster was committing copyright and trademark infringement, you stated that OptionMonster's investigation with respect to Delicious Monster's infringement claims was continuing, and you requested additional information from Delicious Monster that you alleged was necessary to evaluate the claims. Then, without waiting for my reply or any additional information, OptionMonster filed a complaint for declaratory judgment in Illinois.

*Ashbaugh Reply Decl.*, Ex. C.

**B.  As OptionMonster's CEO Testified, It Received Delicious Monster's Initial E-Mail but Failed to Respond, Which Created a Timing Problem That Led to This Case Being Filed During the Infancy of Settlement Negotiations**

OptionMonster CEO Dirk Mueller-Ingrand gave similarly clouded testimony. Specifically, he indicates in paragraphs 9 and 10 of his declaration that this lawsuit was filed because OptionMonster needed to be able to finalize its budgets. Specifically he claims:

- "As of the date of filing of the Complaint, February 12, 2008, Delicious Monster had been threatening OptionMonster with legal action for months, and had done nothing about it." *Declaration of Dirk Mueller-Ingrand*, ¶9.

- "OptionMonster needed to have a definitive plan in place regarding the logo to be used on its websites prior to the launch of these two new major Internet websites for OptionMonster [in April 2008]." *Mueller-Ingrand Decl.*, ¶9.

This testimony illustrates two things. First, OptionMonster was aware of Delicious Monster's original e-mail, sent in December of 2007,[3] but chose not to respond to it. *Shipley Decl.*, Ex. C. Thus, it was OptionMonster who created a time problem, not Delicious Monster, who had wanted to engage in settlement talks months earlier. Second, OptionMonster had a need to disregard the negotiation process and initiate this litigation with the hope (albeit misguided) that it could either scare Delicious Monster into settling, or win this case via an immediate summary judgment motion.

---

[3] The *Declaration of William J. Shipley* was submitted with Delicious Monster's motion.

Had OptionMonster merely responded to the Delicious Monster's initial e-mail, this matter may very well have been settled already, without a lawsuit ever being filed. However, by not responding, OptionMonster created this situation. It must now be held to the consequences of its actions.

C.  **Like the Declarations Underlying It, OptionMonster's Statement of Facts Also Paints an Inaccurate Picture of OptionMonster's Bad Faith in Racing to the Courthouse to File This Lawsuit While Delicious Monster Was Trying to See If the Parties Could Settle Without the Need for Litigation**

OptionMonster's statement of facts contains similar problems. For example, OptionMonster's recounting of the February 6, 2008 telephone conversation between Mr. Lavender and Ms. Ashbaugh was not accurate.[4] On February 6 Ms. Ashbaugh spoke to Mr. Lavender (but not Ms. Plater) for ten to fifteen minutes. The conversation was very amicable, friendly, and Ms. Ashbaugh was left with the impression that the parties would work together to facilitate a resolution. *Ashbaugh Reply Decl.*, ¶5; *Popp Decl.*, ¶4. In fact, Ms. Ashbaugh went out of her way to make it clear to Mr. Lavender that Delicious Monster wanted to discuss the issues to figure out both where both parties stood, and Ms. Ashbaugh would review the forthcoming letter from OptionMonster, after which counsel for both parties would speak again. At that point, it was definitely understood that the next step would be for OptionMonster to respond to Ms. Ashbaugh's letter, and the parties would go from there. *Ashbaugh Reply Decl.*, ¶5; *Popp Decl.*, ¶4.

Ms. Ashbaugh never said in that conversation that "Delicious Monster was unwilling to compromise or even consider a compromise." *Cf. OptionMonster's Response*, p. 3, with *Ashbaugh Reply Decl.*, ¶6 and *Popp Decl.*, ¶5.. In truth, Ms. Ashbaugh was trying to initiate

---

[4] Given that OptionMonster provided no declaration testimony regarding what Mr. Lavender allegedly said during the telephone conversation, Delicious Monster requests that the Court not consider that portion of Section I(B) of OptionMonster's Response.

7

an active settlement dialogue, but no specific settlement terms were even discussed. *Ashbaugh Reply Decl.*, ¶6; *Popp Decl.*, ¶5. Instead, OptionMonster first suggested a "co-existence agreement" well after this case was filed in a telephone conversation with Delicious Monster attorney Mark Rosencrantz. *Rosencrantz Decl.*, ¶3; *Ashbaugh Reply Decl.*, ¶7. While Mr. Rosencrantz did indicate that a co-existence agreement[5] would not be acceptable, he immediately indicated that Delicious Monster would be willing to sell OptionMonster a license to use its logo, and invited OptionMonster to make a specific offer along those lines. OptionMonster has thus far failed to make such an offer, or otherwise participate in any settlement negotiations. *Rosencrantz Decl.*, ¶3.

In fact, Delicious Monster's counsel wrote to OptionMonster's counsel on April 9 and indicated:

> I assume from the opposition [to the motion to dismiss] and your failure to call me back as you said you would after our telephone conversation that your client has no interest in any settlement discussions. Please let me know if I am mistaken.

*Rosencrantz Decl.*, Ex. B.

OptionMonster's counsel responded as follows:

> Mark, I can't say that we have no interest in settlement discussions. We always are interested. However, we were not able to put a number on the license that your client proposed and frankly would want something other than a license as I do not envision that our respective clients want continuing ties with each other (which a license would do).
>
> Sorry for not calling back on this. I wanted to get this on file for my client and re-visit the prospect of settlement options with them before re-engaging in any discussions. We still remain open to ideas.

---

[5] During his conversation with Ms. Plater, Mr. Rosencrantz confirmed that OptionMonster was proposing that Delicious Monster grant it a full release of liability for all past actions, acknowledge that OptionMonster could continue to use its logo in any way it sees fit, but receive nothing in return. *Rosencrantz Decl.*, ¶3.

*Rosencrantz Decl.*, Ex. B.

Delicious Monster's counsel immediately responded:

> I will wait to hear from you then.
>
> As I indicated previously, my client does not view the co-existence agreement you proposed as a settlement, as Delicious Monster clearly already has the right to use its monster. That is why I proposed a license. Moreover, the license I envisioned would be perpetual, allow any use your client wished, and involve a one-time up front payment from your client to mine that would mean the two companies do not have continuing ties.
>
> If you have other ideas, I will be happy to discuss them with my client.

*Rosencrantz Decl.*, Ex. B.

OptionMonster's counsel pledged to then speak with her clients and continue a settlement dialogue:

> Mark – I've put in my inquiries with my client and will get back to you once we've had a chance to discuss their position or additional ideas.
>
> Carrie

*Rosencrantz Decl.*, Ex. B. Unfortunately, OptionMonster's lack of follow-up mirrors its behavior throughout this case, and Delicious Monster is still waiting for a response to its license agreement proposal or any "additional ideas" OptionMonster might wish to propose. *Rosencrantz Decl.*, ¶3.

### III.   EVIDENCE RELIED UPON

Reply Declaration of Rebecca S. Ashbaugh, Declaration of Ana M. Popp, and Declaration of Mark Rosencrantz and attached exhibits, together with the materials previously submitted in support of the motion and the pleadings and files of the case.

## IV.   LEGAL ARGUMENT

Instead of discussing the applicable Seventh Circuit law set forth in Delicious Monster's motion, OptionMonster's opposition ignored every case cited in the motion, and wrongfully attempted to shift this case under an inapplicable legal standard. Courts in this Circuit, and even this District, have rejected identical attempts in the past, and this Court should follow suit. OptionMonster acted contrary to the express dictates of Seventh Circuit law, and it must now be held accountable.

A.   **Seventh Circuit Case Law Provides Different Tests to Determine Whether a Court Should Exercise Jurisdiction Depending on Whether a Party Exercised Good Faith; OptionMonster Wrongly Wants This Court to Use the Test for a Party Who Acted in Good Faith**

An examination of Seventh Circuit case law reveals that if: (1) a party acted in bad faith – like OptionMonster did – in racing to the court house to file a declaratory relief action for the sole purpose preempting jurisdiction; and (2) the other party then promptly files a lawsuit for infringement, a District Court should decline to exercise jurisdiction. *See, e.g., Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 747 (7th Cir. 1987); *Weber-Stephen Prods. Co. v. Gardena Norge A/S*, 2004 U.S. Dist. LEXIS 2072, at **4-5 (N.D. Ill. Feb. 12, 2004). In contrast, where there was no apparent bad faith surrounding the filing of a declaratory relief lawsuit, and no competing case is filed, a district court should engage in multi-factor analysis in determining whether it should exercise jurisdiction. *See, e.g., Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir. 1994).

There is no other way to read the plethora of cases from the Seventh Circuit. To do otherwise, would require this Court to conclude that the *Nucor* overruled *Tempco sub silentio*, but that *Nucor* was ignored by courts across the Seventh Circuit without comment or

10

explanation. It would also make a case like *Coalsales II, LLC v. Gulf Power Co.*, 2007 U.S. Dist. LEXIS 12593, at *22-23 (S.D. Ill. Feb. 23, 2007) impossible.

B.  **The Two Differing Tests Have Been Recognized and Explained by Courts in This Circuit, and When the Facts Present Here Are Compared to Those, It Becomes Apparent That Dismissal of This Case Is the Appropriate Remedy**

This distinction between the *Tempco* and *Nucor* lines of cases was recognized by the Southern District of Indiana in *Thomson, Inc. v. Parental Guide of Tex., Inc.*, 2003 U.S. Dist. LEXIS 7970 (S.D. Ind. May 12, 2003). In that case, the district court decided to "take the cautious approach of staying this [declaratory relief] action rather than dismissing it, and will direct the clerk to close the action administratively" while the parties litigated an infringement lawsuit elsewhere. *Thomson*, 2003 U.S. Dist. LEXIS at *13. In making that decision, the court discussed the differences between *Tempco* and *Nucor*. The court first discussed why the *Tempco* decision was relevant, and its analysis controlled:

> Thomson seeks to distinguish *Tempco* on the basis that the coercive plaintiff-declaratory defendant had explicitly threatened litigation before the declaratory judgment action was filed. In this case, the parties had stated their different views on the legal effect of Mitsubishi's offer of judgment in the Texas case, but Parental Guide had not explicitly threatened to sue Thomson.
>
> This effort to distinguish *Tempco* is not persuasive. First, there is no indication in Judge Eschbach's opinion for the court in *Tempco* that the court's decision turned on whether the threat of litigation was expressed or implied when the declaratory action was filed. In fact, **Thomson's proposed distinction would also conflict with the reasoning of Tempco, which was based on a desire to avoid "races to the courthouse" and a desire to apply a clear rule that would minimize the use of declaratory actions "as an instrument of procedural fencing either to secure delay or to choose a forum."** 819 F.2d at 750, quoting *American Automobile Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939). Thomson's proposed interpretation would also make the choice of forum depend on facts likely to be hotly disputed. One can easily imagine conflicting testimony over just how clear the "threat" was in a telephone conversation. **That approach**

11

> *would be inconsistent with Tempco's goal of resolving such forum contests quickly and clearly.*
>
> Thomson also argues that it has not engaged in forum-shopping, but that it had legitimate reasons for filing this action when and where it did. To secure dismissal, however, Parental Guide is not required to prove that Thomson filed this action *solely* to defeat Parental Guide's choice of forum. In determining whether the exercise of jurisdiction under the Declaratory Judgment Act would serve a useful purpose, the court exercises its discretion in light of all the circumstances, without trying to divine whether Thomson had only a single purpose for its procedural tactics. Nevertheless, Thomson's remarkable speed - filing the already-drafted complaint the same day that Parental Guide called to ask for payment - is best explained as a well-planned effort to seize the choice of forum the instant that an arguable basis for filing the declaratory action was available. *In any event, to the extent that Thomson felt a genuine need to resolve quickly its dispute with Parental Guide, the quick filing of the Texas action ensures that such relief should be available to Thomson.* Such resolution also will proceed more quickly without further sparring over the choice of forum.

*Thomson*, 2003 U.S. Dist. LEXIS at **9-11 (emphasis added).

The court then went on to explain why *Nucor's* analysis was inapplicable:

> Thomson suggests that this case is analogous to *Nucor Corp. v. Aceros y Maquilas,* in which the Seventh Circuit affirmed a district court's exercise of jurisdiction over a declaratory judgment action filed in response to a threat of a coercive lawsuit in Texas. *The key point in Nucor, however, was that after the coercive plaintiff-declaratory defendant threatened to file suit, it did not actually do so until eight months after the declaratory action was filed, and in the same month that the district court denied a motion to dismiss the declaratory action*. 28 F.3d at 579. *That delay in filing the coercive action showed that there had been no "race to the courthouse," and that fact distinguished the case from Tempco.* In light of that delay in filing the threatened lawsuit, the Seventh Circuit held that the party seeking the declaratory judgment was entitled to proceed without delay to obtain the desired clarification and resolution of its rights. In this case, by contrast, Parental Guide responded immediately by filing a coercive action in the Eastern District of Texas. *See also Institute For Study Abroad, Inc. v. International Studies Abroad, Inc.,* 2001 WL 849348, *5 (distinguishing *Nucor* on precisely this basis and dismissing preemptive declaratory judgment action filed in anticipation of Texas action).

> There is no reason to proceed with duplicate actions in Texas and Indiana. Under the Seventh Circuit's reasoning in *Tempco,* the coercive action in Texas is entitled to priority. ***Thomson has not identified any unusual circumstances that would justify a departure from the usual course, which is to stay or dismiss the declaratory judgment action and to allow the coercive action to proceed.***

*Thomson*, 2003 U.S. Dist. LEXIS at **11-12 (emphasis added); *see also M Credit, Inc. v. Cadlerock, L.L.C.*, 2003 U.S. Dist. LEXIS 13319, at *14 (N.D. Ill. July 28, 2003) (rejecting *Nucor's* applicability, dismissing declaratory judgment action, and holding: "Instead, we acknowledge the Cadle Companies' choice of forum and dismiss M Credit's declaratory judgment action, thereby permitting the Cadle Companies' lawsuit "to proceed in the usual way." *Allendale Mut. Ins. Co.*, 10 F.3d at 431.").

C.  **The Undisputed Facts in This Case Illustrate That *Tempco*—Not *Nucor*— Contains the Appropriate Legal Standard**

In this case, the following facts are undisputed:

- Upon discovering OptionMonster's logo, Delicious Monster sent OptionMonster an e-mail outlining the problem.

- OptionMonster knew of Delicious Monster's initial e-mail, but ignored it.[6]

- Delicious Monster then retained counsel, and sent OptionMonster a letter on February 1, 2008 explaining that Delicious Monster looked "forward to resolving this dispute amicably and without resort to further legal action." *Ashbaugh Reply Decl.*, Ex. B.

- On Wednesday, February 6, 2008, after receiving a voice mail from Mr. Lavender, Ms. Ashbaugh called Mr. Lavender and discussed the situation. At no time during the conversation did Mr. Lavender ever mention filing a lawsuit. *Declaration of Rebecca S. Ashbaugh*, ¶5.[7]

---

[6] OptionMonster's CEO clearly proved this by testifying: "As of the date of filing of the Complaint, February 12, 2008, Delicious Monster had been threatening OptionMonster with legal action for months, and had done nothing about it." *Mueller-Ingrand Decl.*, ¶9. Given that OptionMonster filed this lawsuit within a few days of receiving the initial letter from Delicious Monster's counsel, it is the only way the timeline works.

[7] Which was submitted with Delicious Monster's moving papers.

13

- That same day Ms. Ashbaugh sent Mr. Lavender a follow-up e-mail, in which she reiterated Delicious Monster's hope this matter could be settled without litigation. *Ashbaugh Reply Decl.*, Ex. A.

- The next day, on Thursday, February 7, 2008, Ms. Plater sent Ms. Ashbaugh a letter requesting several categories of information, and concluding with: "We look forward to resolving this dispute amicably. However, we are unable to provide a thorough evaluation of your claims without the further information requested herein. Please feel free to contact me or Mr. Lavender if you wish to discuss this matter further." *Ashbaugh Decl.*, Ex. D.

- The next day Ms. Plater left Ms. Ashbaugh a voicemail to follow-up on her letter and touch base as to the timing of a response. At no point during the voicemail or at *any* other time did Ms. Plater in any way mention filing a lawsuit. *Ashbaugh Decl.*, ¶7.

- Before Ms. Ashbaugh could gather the requested documents, and without contacting Ms. Ashbaugh, OptionMonster filed this lawsuit the following Tuesday morning, on February 12. *Ashbaugh Reply Decl.*, ¶12.

- Delicious Monster then filed its lawsuit in the Western District of Washington.[8]

This fact pattern in directly analogous with numerous cases decided in this Circuit. Delicious Monster cited and analyzed several of them in its motion. OptionMonster elected not to discuss any of them in its opposition. However, the plain reality is that instead of trying to see if litigation could be avoided, OptionMonster instructed its attorneys to race to the courthouse and file a declaratory relief lawsuit. It now is stringing things out by refusing to engage in settlement negotiations, despite overtures from Delicious Monster. The firmly established law of the Seventh Circuit is that such behavior will not be tolerated. This case should be dismissed, and the parties directed to litigate OptionMonster's infringement in the Western District of Washington.

---

[8] The complaint was served on OptionMonster on April 11, 2008. *Rosencrantz Decl.*, Ex. A.

14

## V. CONCLUSION

This case should be dismissed. Delicious Monster at all times conducted itself in accordance with the policies established by this Circuit. In contrast, OptionMonster flouted such dictates, which have been established over the last twenty years. Such actions must not be condoned. This case must be dismissed, and the parties directed to litigate with Delicious Monster acting as a plaintiff proving infringement in the Western District of Washington.

Dated this 22 day of April, 2008.

Respectfully submitted,

**DELICIOUS MONSTER, LLC**

By: /s/ Steven L. Katz
One of its attorneys

Steven L. Katz
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, IL 60601
(312) 245-7500

Of Counsel:
Mark Rosencrantz
Stanislaw Ashbaugh
Columbia Center
701 Fifth Avenue, Suite 4400
Seattle, WA 98104
(206) 386-5900

Attorneys for Defendant
N:\SYS02\11055\Lit\0007 - Motion to dismiss.doc