IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTIONMONSTER HOLDINGS, INC.,

           Plaintiff,

v.

DELICIOUS MONSTER, LLC,

           Defendant.

No. 08 cv 894

Honorable Ronald A. Guzman

## PLAINTIFF'S MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF 15 PAGES, *INSTANTER*

Plaintiff Optionmonster Holdings, Inc. ("Plaintiff"), by and through its undersigned counsel, respectfully moves this Honorable Court for leave to file, *instanter*, its brief in Response To Defendant's Motion For Order Of Dismissal in excess of the page limit established by Local Rule 7.1 ("Motion for Leave"). In support of its Motion for Leave, Plaintiff states as follows:

1.      On March 14, 2008, Defendant Delicious Monster, LLC ("Defendant") filed a Motion for an Order of Dismissal ("Defendant's Motion").

2.      Defendant's Motion advanced numerous arguments and quoted long tracts of single-spaced case law in support of its position that Plaintiff's declaratory judgment action should be dismissed.

3.      In its Response To Defendant's Motion For Order Of Dismissal, Plaintiff has responded to the arguments and numerous factual allegations the Defendant has made. The proper exposition of these responses has required that Plaintiff exceed the page limit imposed by Local Rule 7.1, by two pages.

4.      Plaintiff's Response To Defendant's Motion For Order Of Dismissal was filed on April 8, 2008.  (A copy of Plaintiff's Response To Defendant's Motion For Order Of Dismissal, including a Table of Contents and a Table of Cases, is attached hereto as Exhibit "A.")

5.      Defendant will not be prejudiced, as it has already filed its Reply In Support Of Motion For Order Of Dismissal.  There is no element of surprise involved.

6.      Plaintiff respectfully requests that this Honorable Court grant it leave to file its Response To Defendant's Motion For Order Of Dismissal in excess of the page limit.


April 23, 2008

                                        /s/ Matthew C. Luzadder
                                        One of the Attorneys for Plaintiff,
                                        OPTIONMONSTER HOLDINGS, INC.

Timothy R. Lavender
Caroline C. Plater
Matthew C. Luzadder
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606
(312) 857-7070

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTIONMONSTER HOLDINGS, INC.,

        Plaintiff,

    v.

DELICIOUS MONSTER, LLC,

        Defendant.

No. 08 cv 894

Honorable Ronald A. Guzman

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
ORDER OF DISMISSAL**

## TABLE OF CONTENTS

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER OF DISMISSAL**...................................................................................... 1

**I.    FACTUAL BACKGROUND**........................................................................ 1

    A.    Delicious Monster Has No Basis For Its Infringement Claims .......................... 1

    B.    OptionMonster's and Delicious Monster's Communications Regarding The Cease and Desist Letter ................................................................. 3

    C.    Delicious Monster's Complete Communication Shutdown Following February 7, 2008 .................................................................................. 4

    D.    OptionMonster Has Clear Rights in the Use of Its Monster Logo ...................... 6

**II.    DISCUSSION** ............................................................................................ 7

    A.    OptionMonster properly filed a complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201, to resolve a justiciable controversy. ................................ 7

    B.    The Court should exercise its discretion to hear the declaratory judgment action.................................................................................................. 11

        1.    The factors set forth by the Seventh Circuit Court of Appeals favor the Court's exercise of jurisdiction under the Act. .............................. 11

        2.    Defendant only addresses one of the considerations set forth by the Seventh Circuit Court of Appeals. .................................................. 13

**III.    Conclusion** ............................................................................................ 17

# TABLE OF AUTHORITIES

*Black and Decker Corp. v. Vermont American Corp.*, 915 F.Supp. 933 (N.D.Ill. 1995) ....................................................................................................... 16

*Chicago Linen Exchange v. Adler*, 888 F.Supp. 92 (C.D.Ill. 1995) ...................................... 15, 16

*Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165 (7th Cir. 1969)..................................................... 8

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985 (7th Cir. 1989) ................................................................................................... 8, 9, 11

*Government Suppliers Consolidating Servs. v. Bayh*, 975 F.2d 1267 (7th Cir. 1992) ...................................................................................................... 8, 10

*Grafon Corp. v. Hausermann*, 602 F.2d 781 (7th Cir. 1979) ....................................................... 8

*International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir. 1980) .............................. 8

*Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104 (6th Cir. 1991) ........................... 12

*North Shore Gas Co. v. Salomon, Inc.*, 896 F.Supp. 786 (N.D.Ill. 1995) ................................... 12

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir. 1994) .................................................................................... 9, 12, 13, 14

*Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987) ...................................................................................................... 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTIONMONSTER HOLDINGS, INC.,

Plaintiff,

v.

DELICIOUS MONSTER, LLC,

Defendant.

No. 08 cv 894

Honorable Ronald A. Guzman

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER OF DISMISSAL

Defendant's Motion for an Order of Dismissal falls woefully short of meeting the standards necessary for bringing, much less winning, a motion to dismiss based on an alleged preemptively filed declaratory judgment. Defendant has addressed only one of the five criteria considered by the courts in this jurisdiction for such motions and purposefully omits facts that demonstrate the propriety of Plaintiff's filing for Declaratory Judgment in the Northern District of Illinois. Based on the relevant facts and law set forth fully herein, Defendant's motion should be denied.

## I.    FACTUAL BACKGROUND

### A.    Delicious Monster Has No Basis For Its Infringement Claims

Delicious Monster's logo is not a registered trademark or registered copyright. (*See* Declaration of Caroline C. Plater ("Plater Decl."), attached hereto as Exhibit 1, ¶ 4.) In addition, at all relevant times to this motion, the "famous graphic artist" that Delicious Monster commissioned to create its logo has no works, including the monster logo at issue, registered as trademarks or copyrighted works with the United States Patent and Trademark Office

("USPTO"). (Plater Decl. ¶¶ 3-4.) Moreover, Delicious Monster and OptionMonster do not operate remotely the same businesses or cater to the same customers. (*See* Declaration of Dirk Mueller-Ingrand, ("Mueller Decl"), attached hereto as Exhibit 2, ¶¶ 2-8.) These facts are uncontested and uncontestable.

Delicious Monster first alerted OptionMonster of the alleged infringement of its monster logo on December 2, 2007. (*See* Docket No. 13, Attachment 1, Shipley Decl. Exs. C, D.) This notification was not sent to an executive, registered agent or attorney representing OptionMonster. Rather it was sent to Rod David, a contributing editor to the OptionMonster website. *Id.* Mr. David informed Mr. Shipley, CEO of Delicious Monster, of David's position and his lack of decision making authority at OptionMonster in his response email of the same date. *Id.* After the December 2, 2007 email exchange, Delicious Monster never contacted OptionMonster about any perceived infringement until its attorneys sent a cease and desist letter to OptionMonster's CEO, Dirk Mueller[1], and registered agent and attorney, Timothy Lavender, on February 1, 2008. (*See* Plater Decl. ¶ 2, Exhibit A.)

Upon receiving the cease and desist letter from counsel for Delicious Monster, OptionMonster's counsel investigated the claims of trademark and copyright infringement by conducting thorough searches of the USPTO trademark and copyright registrations in an effort to locate any registrations of the Delicious Monster logo under the names Delicious Monster, William Shipley and Christopher Masciocchi (the allegedly famous graphic designer of the logo). (Plater Decl. ¶¶ 3-4.) None of these searches revealed any federal trademark or copyright registrations for the Delicious Monster logo. (Plater Decl. ¶ 4.) In addition, OptionMonster conducted its own research regarding the use of monsters as logos, searching

---

[1]     The letter was not emailed to Mr. Mueller's company email address, but rather, was sent to a private email address for Mr. Mueller.

specifically for those that resembled the Delicious Monster logo. OptionMonster discovered at least two instances where similar fanciful monster figures had been used in product branding or trade dress, prior to Delicious Monster's claimed first use date. (Plater Decl. ¶ 5.) The results of these investigations, combined with OptionMonster's knowledge that it had not knowingly infringed on Delicious Monster's logo, and the fact that Delicious Monster and OptionMonster sold different goods and services and had no customer overlap, confirmed OptionMonster's position that there was no infringement, trademark or otherwise, in this instance. (*See* Mueller Decl. ¶ 7; Plater Decl. 7.)

## B.    **OptionMonster's and Delicious Monster's Communications Regarding The Cease and Desist Letter**

On February 5, 2008, Mr. Lavender, on behalf of OptionMonster, attempted to speak by telephone with counsel for Delicious Monster, Rebecca Ashbaugh, regarding her February 1, 2008 letter. After having been unable to reach Ms. Ashbaugh by phone, Mr. Lavender sent Ms. Ashbaugh an email, dated February 6, 2008, asking for more information regarding her client's claims. (Plater Decl. ¶ 8.) Mr. Lavender and Ms. Ashbaugh spoke briefly later that day, on February 6, 2008, in which conversation Mr. Lavender conveyed OptionMonster's position that there was no infringement for various stated reasons and suggested a mutual co-existence agreement be entered by the parties as a compromise to the alleged infringement issues raised by Delicious Monster. Ms. Ashbaugh responded that Delicious Monster was unwilling to compromise or even consider a compromise. Shortly thereafter, Ms Ashbaugh also responded to Mr. Lavender's email, in which she stated: "I would hope that your letter does not simply request information from my client but rather responds to my letter and provides the requested written confirmation or sets forth the grounds, if any, on which optionMonster [sic] is defending its infringement." (Plater Decl. ¶ 8, Exhibit B (emphasis

added).) This statement and Ms. Ashbaugh's prior comments, left little, if any, room for negotiations with Delicious Monster. Based on its investigation, OptionMonster had no reason to believe any infringement had occurred. (Plater Decl. ¶ 8.) OptionMonster wanted to address the possibility that Delicious Monster may possess some information to the contrary that was not publicly available to OptionMonster. However, Delicious Monster had already indicated that it was not willing to provide additional information requested.

Nonetheless, on February 7, 2008, Caroline Plater, counsel for OptionMonster, responded to Delicious Monster's cease and desist letter, setting forth the legal and factual bases for OptionMonster's position of non-infringement and requesting any additional information that Delicious Monster may have that supports its claims of trademark and copyright infringement. (Plater Decl. ¶ 9, Exhibit C.) OptionMonster was unequivocal that, based on the facts it possessed and the applicable law, no infringement had occurred. (*Id.*) This letter was sent by email and facsimile that same date. (*Id.*) Given Ms. Ashbaugh's express instruction to OptionMonster not to seek additional documentation supporting her client's claims of infringement, OptionMonster had little faith that Delicious Monster would seriously consider its response. Delicious Monster never indicated a willingness or desire to provide additional documentation prior to or after Ms. Plater's February 7, 2008 letter. (Plater Decl. ¶ 10.)

**C.    Delicious Monster's Complete Communication Shutdown Following February 7, 2008**

Following OptionMonster's February 7, 2008 correspondence, Delicious Monster did not respond to any communications sent by OptionMonster and did not initiate any communications with OptionMonster. Ms. Plater called Ms. Ashbaugh on Friday, February 8, 2008, and left a voicemail message asking Ms. Ashbaugh to call her to discuss OptionMonster's response to Delicious Monster's cease and desist letter. (Plater Decl. ¶ 11.) Ms. Ashbaugh did

not return that call on the Friday when it was left, or anytime thereafter (either prior to or

following the filing of the Complaint). (*Id.*) Ms. Ashbaugh never responded in writing to

OptionMonster's February 7, 2008 letter. (*Id.*)

Pursuant to her conversation with Mr. Lavender, Ms. Ashbaugh was aware that

OptionMonster was in the midst of a major expansion of its websites and thus needed closure on

this issue for business development purposes and was aware that OptionMonster had offered to

enter into an mutual co-existence agreement. (*See* Plater Decl. Ex. B). Indeed, the impetus to

filing the instant declaratory judgment action was not to win the race to the courthouse, it was the

impending and ongoing development of two websites for OptionMonster, one planned to launch

in April 2008 and the other planned to launch in August 2008, of which OptionMonster had

already determined the budgets and development schedules. (Mueller Decl. ¶ 9.) Delicious

Monster had been threatening OptionMonster with legal action for months, and had done nothing

about it. OptionMonster's management needed to have a definitive plan in place regarding the

logo to be used on its websites prior to their launch. (*Id.*) Accordingly, rather than wait to be

sued by Delicious Monster at some unknown future date, which may be well after

OptionMonster had invested additional capital on top of its original investment into the

expansion of its websites, OptionMonster sought clarity by filing the instant action on February

12, 2008.

Following the filing of the Complaint and related papers on February 12, 2008,

Ms. Plater emailed courtesy copies of the same to Ms. Ashbaugh explaining that pressing

business issues (addressed above) and Delicious Monster's lack of response forced

OptionMonster to proceed with this filing. (Plater Decl. ¶ 12, Exhibit D.) Additionally, Ms.

Plater again invited further negotiations between the parties in an effort to resolve the dispute

short of proceeding with the litigation. (*Id.*) Ms. Ashbaugh never responded to Ms. Plater's

February 12, 2008 email. (Plater Decl. ¶ 13.) Later that same day, Ms. Plater sent Ms.

Ashbaugh filed stamped copies of the Complaint and related papers. (Plater Decl. ¶13, Exhibit

E.) Ms. Ashbaugh made no response to this email either. (Plater Decl. ¶13.) Indeed, it was not

until February 26, 2008, that Ms. Ashbaugh made any contact with counsel for OptionMonster

regarding this matter. (Plater Decl. ¶ 14, Exhibit F.) This was in response to an email sent by

Ms. Plater on February 25, 2008, enclosing the court's notice regarding the voluntary Lanham

Act mediation program. (*Id.*) Notably, Ms. Ashbaugh's response merely asserted that her client

had not been served at that date. (*Id.*) Ms. Ashbaugh did not inform Ms. Plater that Delicious

Monster had filed its own Complaint in the Western District of Washington three days prior, on

February 22, 2008, and did not indicate any willingness to engage in any private negotiations to

settle the parties' dispute. (*Id.*) In fact, the first knowledge that OptionMonster had of the filing

of the Complaint by Delicious Monster in the Western District of Washington was when it

received the present Motion. (Plater Decl. ¶ 15.) OptionMonster has not been properly served in

that action and has not agreed to waive service of process. (*Id.*)

      **D.**    **<u>OptionMonster Has Clear Rights in the Use of Its Monster Logo</u>**

      OptionMonster is a financial firm founded in August, 2005. Through

OptionMonster's website (located at <u>www.optionmonster.com</u>), OptionMonster provides

investors with a fast, easy-to-use Internet site designed to meet their requirements for news,

market research, and information on stocks and options. (Mueller Decl. ¶ 2.) OptionMonster's

website contains links to news from around the world, including information and specific tools

for stocks and options, research, and education which allows users to quickly and efficiently

access financial information from the Internet from hundreds of websites. (Mueller Decl. ¶ 3.)

OptionMonster has been using the mark OPTIONMONSTER in the online media business since

early 2006. (Mueller Decl. ¶ 4.) OptionMonster filed for a trademark registration of its

OptionMonster monster logo on August 17, 2006, and was issued an allowance on January 15,

2008. (Mueller Decl. ¶5.) OptionMonster has been using its monster logo on its website and

related business materials continuously since 2006. (*Id*.) OptionMonster has over twenty-five

trademark and copyright applications and/or registrations, including the monster logo trademark

registrations, with the USPTO for trademarks and copyrighted materials used in association with

OptionMonster's website and business in general. (*See* Docket No. 1, Complaint, ¶¶ 11-12;

Mueller Decl. ¶ 6.)

## II.    DISCUSSION

### A.    OptionMonster properly filed a complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201, to resolve a justiciable controversy.

OptionMonster has filed this present action to avoid financial damages that began

to accrue when Defendant first alleged infringement of its monster logo on December 2, 2007.

Since December 2, 2007, Defendant repeatedly threatened to take legal action against

OptionMonster for alleged trademark and copyright infringement if it did not comply with

Defendant's demands. Finally, over two months after Defendant first alleged infringement

claims against OptionMonster, business circumstances at OptionMonster dictated that

Defendant's alleged claims be immediately and formally addressed and resolved. Therefore,

OptionMonster filed the instant declaratory judgment action to settle the controversy and avoid

further delay and damage to its business development model. The declaration of non-

infringement sought by OptionMonster in this action is precisely the type of remedy the

Declaratory Judgment Act (the "Act") was enacted to afford to parties.

The purpose of the Act is "to avoid accrual of avoidable damages to one not

certain of his rights and to afford him an early adjudication, without waiting until his adversary

should see fit to begin suit, after damage had accrued." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969). A party may seek a declaratory judgment where that party desires a declaration of the legal effect of a proposed or past course of action. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 989 (7th Cir.1989). However, before a party may seek a declaratory judgment, it is required that the controversy has ripened to a point where one of the parties could invoke a coercive remedy against the other party - simply stated - a justiciable controversy must exist. *Id*. Moreover, if the legal issues presented are ones "the resolution of which would be essentially unaffected by further factual development," the court will find that the dispute presents a ripe controversy under the Act. *Government Suppliers Consolidating Servs. v. Bayh,* 975 F.2d 1267, 1275 (7th Cir.1992).

In *G. Heileman Brewing Co., Inc.*, the Seventh Circuit adopted a two-pronged test for establishing an actual controversy for trademark infringement actions. This test was based on the Seventh Circuit's test set forth in *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207 (7th Cir.1980). First, the defendant must have engaged in conduct creating a reasonable apprehension that the plaintiff will face an infringement suit, or the threat of one, if it commences or continues the questionable activity. *Id*. at 990. ("A reasonable apprehension of an infringement suit may be based upon the defendant's assertion of exclusive rights against another party."); see also *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783-84 (7th Cir.1979). Reasonable apprehension exists when there is "an implied charge ... which would cause a reasonable man to fear that he or his customers face an infringement suit or threat of one." *Id*.

Second, the plaintiff must have used the trademark in controversy or have engaged in preparations such that, but for a finding that the trademark infringes, the plaintiff would and could begin using the trademark immediately. *G. Heileman Brewing Co., Inc.,* 873

F.2d at 991 (court found second prong satisfied where "[plaintiff] has already expended many thousands of dollars for product development …designs and advertising, and is committed to making rapidly increasing expenditures totalling [sic] millions of dollars."). By using the trademark in controversy, or making active preparations to use the trademark, a plaintiff will be able to satisfy the second prong by showing that "he has more than a mere speculative interest in the validity and applicability of the trademark. His interest is direct, real, and immediate, not a mere academic one." *Id.* at 991.

Here, the first prong of the actual controversy test is clearly satisfied because the Defendant's threat of an infringement suit was very real. Defendant first threatened litigation on December 2, 2007. (*See* Docket No. 13, Attachment 1, Shipley Decl. Exs. C, D.) Defendant renewed this threat when its counsel contacted OptionMonster on February 1, 2008. (*See* Plater Decl. Ex. A.) Both times, Defendant threatened legal action if OptionMonster did not cease and desist from using the monster logo in question. Defendant's own letters and e-mails establish that OptionMonster possessed a reasonable apprehension of encountering an infringement action or threat of one at the time the Complaint was filed. (*See* Id; Plater Decl. Exs. A, B.) Once one party sends a letter threatening to initiate litigation within a specified period of time, the dispute presents a ripe controversy on which to base a declaratory judgment action. *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994). At the time that Plaintiff filed suit in this case, the dispute in this case was "no longer an abstract question." In Defendant's February 1, 2008 letter, Defendant's counsel stated, "if I have not received your written confirmation by February 6, 2008, Delicious Monster may be forced to file a lawsuit against you for copyright and trademark infringement and ask for its damages." (*See* Plater Decl., Ex. A.) This letter presented the legal issues between the parties very clearly.

Furthermore, the resolution of the legal issues contained in OptionMonster's Complaint are "essentially unaffected by further factual development." *Government Suppliers,* 975 F.2d at 1275. Defendant stated in its letter, "I would hope that your letter does not simply request information from my client but rather responds to my letter and provides the requested written confirmation or sets forth the grounds, if any, on which optionMonster [sic] is defending its infringement." (Plater Decl., Ex. B.) The fact that the Defendant stated that it was unwilling to provide any further information foreclosed any further factual development and crystallized the issues.[2] Based on the facts and evidence alleged in OptionMonster's Complaint, this controversy can be decided without further factual development. The allegations of the Complaint and exhibits thereto, clearly set forth the facts with regard to any infringement claims; namely, OptionMonster's current trademark registrations for its monster logo, its continued use and the products and services that its provides. (*See* Docket No. 1, Complaint ¶¶ 10-12, Ex. A.) Conversely, the Complaint also sets forth facts regarding Delicious Monster's lack of any registration, trademark or copyright, with regard to its monster logo, and that the parties provide different products and service to different customer bases. (*See* Id., ¶¶ 13-16.)

The second prong of the actual controversy test is easily satisfied by OptionMonster's continued use of its monster logo, since 2006, both on its website and on other promotional materials as well as its trademark registration of the monster logo. (Mueller Decl. ¶ 5.) Furthermore, OptionMonster had already allocated significant money and was allocating more money and resources to the expanded branding and use of the OptionMonster name and distinct monster logo at the time Defendant threatened to file an infringement action. (Mueller

---

[2]    The fact that Defendant was attempting to hold the threat of a lawsuit over Plaintiff's head, without actually filing suit, is further evidenced by Defendant's empty claims that it holds a "copyright" to the intellectual property that it allegedly seeks to protect, when in fact it did not even have an application on file for a copyright registration at any time of its threats. (*See* Plater Decl. ¶ 4.)

Decl. ¶¶ 9-10.)  Clearly, at the time OptionMonster filed suit under the Act, it had an interest in

its trademark that was "direct, real, and immediate."  *G. Heileman Brewing Co., Inc.,* at 873 F.2d

at 991.  Similar to the plaintiff in *G. Heileman Brewing Co., Inc.,* OptionMonster had spent

hundreds of thousands of dollars for the creation of its monster logo and marketing materials and

was preparing to commit even more money to expand its marketing footprint, including its

registered trademarks.  (Mueller Decl. ¶ 10.)

   **B.    The Court should exercise its discretion to hear the declaratory judgment action.**

         The factors that the Court should consider when deciding whether to exercise

jurisdiction under the Act over OptionMonster's request for declaratory judgment all weigh

heavily in favor of the exercise of that jurisdiction.  Most significantly, a declaratory judgment

determining OptionMonster's ownership of its distinctive monster logo would fully and finally

settle the controversy.  Furthermore, as discussed in detail below, Defendant's motion to dismiss

only addresses one of the five criteria considered by the courts in this jurisdiction for such

motions, and tellingly does not mention the most important criteria – whether OptionMonster's

request for declaratory judgment would settle the controversy at hand.

         1.    The factors set forth by the Seventh Circuit Court of Appeals favor the
                Court's exercise of jurisdiction under the Act.

         The Seventh Circuit has set forth five considerations the district court should

undertake when deciding whether to exercise discretion to hear a declaratory judgment action:

         (1) whether the judgment would settle the controversy;

         (2) whether the declaratory judgment action would serve a useful purpose in clarifying
         the legal relations at issue;

         (3) whether the declaratory remedy is being used merely for the purpose of "procedural
         fencing" or "to provide an arena for a race for *res judicata*";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and

(5) whether there is an alternative remedy that is better or more effective.

*NUCOR Corp.*, 28 F.3d at 579, citing *Nationwide Mut. Fire Ins. Co. v. Willenbrink,* 924 F.2d 104, 105 (6th Cir.1991).

The first consideration is the most important consideration and is the basis underpinning OptionMonster's request for declaratory judgment. Although the courts of the Seventh Circuit consider all five of these factors, the key factor is whether "a declaratory judgment will settle the particular controversy and clarify the legal relations in issue." *North Shore Gas Co. v. Salomon, Inc.*, 896 F.Supp. 786, 788 (N.D.Ill. 1995), *accord, NUCOR Corp.*, 28 F.3d at 579. OptionMonster's request for declaratory judgment would settle the controversy at hand. Specifically, Paragraph 22 of OptionMonster's Complaint, Claims For Relief, states, "OptionMonster seeks a declaratory judgment from this court that its creature logo does not constitute trademark or copyright infringement of the [Defendant's] creature logo." The remaining remedies requested, such as costs, center around this request for relief. The Court's determination of this single request would put to rest the claims of trademark and copyright infringement that Defendant has been threatening OptionMonster with since December 2, 2007.

This factor overlaps considerably with the second consideration, whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue. *NUCOR Corp.*, 28 F.3d at 579. A determination that OptionMonster's monster logo is non-infringing, and thus, Defendant's demand that OptionMonster cease and desist from using OptionMonster's logo is without basis, would clarify the legal relations at issue.

The third consideration, whether this action could be construed as "procedural fencing" or a "race for *res judicata,*" also weighs in OptionMonster's favor. As set forth in

detail in Section B.2. below and in the declarations and exhibits hereto, there was simply no race

to the courthouse as Defendant argues. OptionMonster had legitimate rights and reasons to seek

the instant declaratory judgment at this time and in this Court. Because Defendant has chosen to

make the third consideration the sole focus of its Motion to Dismiss, OptionMonster will address

this consideration in further detail below.

The fourth consideration likewise weighs in favor of the exercise of jurisdiction.

The use of a declaratory action in this matter would not increase friction between our federal and

state courts or improperly encroach on state jurisdiction. The jurisdiction alleged in

OptionMonster's Complaint is based solely on federal law, namely 15 U.S.C. §1051 *et seq.*, the

Lanham Act. OptionMonster's Complaint does not allege any state law claims and only seeks a

declaration that there is no infringement, trademark or otherwise.

Finally, the fifth consideration, best remedy, weighs heavily in favor of the Court

exercising discretion to hear this declaratory judgment action. A declaration that there is no

infringement is the best remedy for Defendant's continued threats of trademark and copyright

infringement by determining that OptionMonster's logo is non-infringing.

> 2.  Defendant only addresses one of the considerations set forth by the
>     Seventh Circuit Court of Appeals.

Defendant has ignored the other four considerations in its motion to dismiss and,

instead, repeatedly argues the third consideration by alleging that this was a "race to the

courthouse." As demonstrated by the declarations and exhibits submitted herewith,

OptionMonster is not using the declaratory remedy "merely for the purpose of procedural

fencing or to provide an arena for a race for *res judicata*." *NUCOR Corp.*, 28 F.3d at 579. In

*NUCOR Corp.*, the defendant appealed the district court's exercise of jurisdiction under the Act.

The defendant claimed that the court allowed the plaintiff to use the Act "as a weapon to

frustrate the lawsuit that [the defendant] was prepared to file in Texas. *NUCOR Corp.*, 28 F.3d at 578. The Seventh Circuit held that once the defendant sent its notice letter threatening litigation if the plaintiff did not capitulate to its demands, the disagreement was "no longer an abstract question" and the threatened plaintiff properly sought a declaration of its rights under the Act and the district court did not err in exercising jurisdiction. *NUCOR Corp.*, 28 F.3d at 578. In *NUCOR Corp.* the defendant sent the plaintiff a "notice letter" describing the plaintiff's alleged breach of contract and announced that litigation be filed in Texas within sixty days if the plaintiff did not pay the defendant's alleged damages. *Id.* at 577. Shortly after receiving this "notice letter" and rather than waiting for the expiration of the period set by the defendant, the plaintiff filed a declaratory judgment action. *Id.* Just as in the *NUCOR Corp.* case, Defendant sent OptionMonster a letter outlining the infringement claims Defendant claimed it would assert against OptionMonster in a legal action if OptionMonster did not immediately cease using the monster logo and respond accordingly within five days. OptionMonster was not required to wait until Defendant chose to make good on the empty threats that it had been issuing since December 2007. Knowing that Defendant's claims were without merit, OptionMonster filed a suit under the Act to resolve the Defendant's allegations. OptionMonster's election to seek a declaratory judgment is within the purpose of the Act and specifically sanctioned by the Seventh Circuit Court of Appeals in this factual scenario. *Id.* at 578-79.

Declaratory judgment actions aimed solely at wresting choice of forum from "natural" plaintiff will normally be dismissed, but if declaratory judgment will clarify and settle disputed legal relationships and afford relief from uncertainty and controversy that created issues, it is usually resolved rather than dismissed. *NUCOR Corp.*, 28 F.3d at 578, citing *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987).

Although Plaintiff repeatedly cites to *Tempco*, not once does Plaintiff argue that

OptionMonster's declaratory judgment action will not fully resolve the dispute at hand. Instead,

Defendant repeatedly makes the conclusory argument that there has been a "race to the

courthouse" without presenting any evidence that that this declaratory action was being used

merely for "procedural fencing." Defendant also repeatedly states that at no time did Plaintiff's

counsel mention filing a lawsuit. However, Defendant ignores the fact that during the

negotiation period, starting with Defendant's December 2, 2007 email, Defendant had repeatedly

threatened legal action against the Plaintiff if it did not capitulate to all of Defendant's demands,

but had not filed any such action as of February 12, 2008, the date this Complaint was filed.

OptionMonster's lawsuit stemmed from the need to resolve Defendant's spurious claims so

OptionMonster could move on with its pressing business planning and development, after

OptionMonster had unsuccessfully tried to resolve the matter outside of the courts.

Defendant argues that since OptionMonster suit was filed first, it must be

dismissed. Defendant cites *Tempco* for the proposition that if a party seeks a declaratory

judgment action, and the defendant objects, the law suit must be dismissed. Defendant's overly

simplistic argument is not supported by the law and if accepted, Defendant's argument would

abrogate the purpose of the Act. "In evaluating whether a lawsuit should proceed or give way to

a previously-filed action between the same parties, the fact that one suit was filed prior to the

other is only one of several relevant factors." *Chicago Linen Exchange v. Adler*, 888 F.Supp. 92,

93 (C.D.Ill. 1995) (holding that it was unnecessary to determine the forum based on the Seventh

Circuit's decision in *Tempco* and that balance of the factors weighed in favor of Illinois as most

convenient forum). The court in *Alder* also set forth several factors addressing the relative

convenience of the competing forums, including: (1) The relative ease of access to sources of

proof; (2) availability of compulsory process for attendance of unwilling, (3) and the cost of

obtaining attendance of willing, witnesses and all other practical problems that make trial of a

case easy, expeditious and inexpensive. *Id.* at 93.  Defendant did not even address all five of the

main considerations, much less the sub-set of three criteria stated in *Adler*.  However, if

Defendant had addressed the factors considered in evaluating the relative convenience of the

forums, it would likely have found that the convenience factors weigh evenly for both sides.[3]

Nonetheless, given that Defendant has not argued *forum non conveniens* or made a motion on

those grounds, Plaintiff will reserve the right to address these issues when and if proper.

            In fact, this court has transferred subsequently filed infringement actions to the

forum where a declaratory judgment action was first brought.  In *Black and Decker Corp. v.*

*Vermont American Corp.*, 915 F.Supp. 933, 936 (N.D.Ill. 1995), the court found that transfer to

the forum where a declaratory judgment action had been filed 16 days earlier was warranted.

The court found that the defendant in the declaratory judgment action could assert its

infringement action as a compulsory counterclaim in the declaratory judgment action and, if

successful, "would be entitled to no less relief than possible under the instant complaint."  *Id.*

The court reiterated that the courts of the Seventh Circuit do not rigidly follow the "first to file"

rule, determined that *Tempco* was not dispositive and looked to all five factors to be evaluated

---

[3]        For the sake of argument, Plaintiff submits the following relative convenience analysis.
First, each party no doubt claims that the sources of proof reside at their respective
principle places of business, Chicago for OptionMonster, and Seattle for Delicious
Monster.  Second, the availability of compulsory process should be the same in each
forum – both parties are asserting legal claims that are compulsory in either forum and
will submit them to jurisdiction.  With regard to non-party witnesses, it is not expected
that there would be any given the nature of the claims.  Third, the cost associated with a
trial in either the Northern District of Illinois or Western District of Washington likewise
does not weigh in favor of dismissing this action.  The aggregate costs will be the same in
either forum.

when determining whether to transfer an action. The court ultimately determined to transfer the case to the Western District of Kentucky, where the declaratory judgment had originally been filed.

## III.    CONCLUSION

Defendant's Motion for an Order of Dismissal fails to address four of the five necessary factors for such a motion and, consequently, fails to provide the Court with any basis on which to grant the motion. Defendant has avoided addressing the other four factors because, as set forth above, those criteria clearly demonstrate the propriety of Plaintiff seeking a declaratory judgment in the Northern District of Illinois. Simply put, the key consideration - whether a declaratory judgment will settle the particular controversy and clarify the legal relations in issue – is satisfied with the filing of Plaintiff's Complaint for Declaratory Judgment. Plaintiff seeks a declaration of non-infringement and Defendant claims Plaintiff has engaged in infringement. This action was not a race to the courthouse, but rather was a legitimate response to Defendant's continued and unfulfilled threats of litigation which had the potential to affect major business developments in OptionMonster's very near future.

Accordingly, based on the foregoing and the declarations and exhibits submitted in support, Plaintiff respectfully requests that the Court deny Defendant's Motion for an Order of Dismissal.

/s/ Caroline C. Plater
One of the Attorneys for Plaintiff,
OPTIONMONSTER HOLDINGS, INC.

Timothy R. Lavender
Caroline C. Plater (#6256076)
Matthew C. Luzadder (#6283424)
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606
(312) 857-7070

# EXHIBIT 1

CH01/LUZAM/218591.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTIONMONSTER HOLDINGS, INC.,

     Plaintiff,

     v.

DELICIOUS MONSTER, LLC,

     Defendant.

No. 08 cv 894

Honorable Ronald A. Guzman

## DECLARATION OF CAROLINE C. PLATER

I, Caroline C. Plater, declare as follows:

1.     I am an associate at Kelley Drye & Warren LLP, counsel of record for Plaintiff OptionMonster Holdings, Inc. ("OptionMonster") in the above-captioned action. I am a member in good standing of the State Bar of Illinois. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath:

2.     After the December 2, 2007 email from Delicious Monster to a contributing editor of OptionMonster's website, Rod David, Delicious Monster never contacted OptionMonster about any perceived infringement until its attorneys sent a cease and desist letter to OptionMonster's CEO, Dirk Mueller, and registered agent, Timothy Lavender, on February 1, 2008. (Exhibit A.) Mr. Lavender is a partner at Kelley Drye & Warren and forwarded this letter to me on the same date it was received.

3.     Upon receiving the cease and desist letter from counsel for Delicious Monster, I along with the assistance of other attorneys and support staff, conducted an investigation of

Delicious Monster's claims of trademark and copyright infringement. This was done by searching the United States Patent and Trademark Office ("USPTO") online trademark and copyright registrations for any registrations associated with the Delicious Monster logo.

4.    Specifically, in the first week of February 2008, I and others in my firm, searched both the trademark and copyright registration databases of the USPTO using the following terms/names, as search terms: Delicious Monster, William Shipley and Christopher Masciocchi. None of these searches revealed any federal trademark or copyright registrations for the Delicious Monster logo. Indeed, Mr. Masciocchi had no trademarked or copyrighted works registered in his name, despite his alleged famous stature as a graphic artist.

5.    In addition, in the first week of February 2008, I and others attorneys and staff, conducted research regarding the use of monsters as logos which resembled the Delicious Monster logo, and found at least two instances where similar fanciful monster figures had been used in branding.

6.    Finally, in the first week of February 2008, I and others attorneys and staff, conducted legal research regarding the effect of having no copyright or trademark registrations for the Delicious Monster logo with regard to its claims of copyright and trademark infringement.

7.    The results of these investigations, combined with OptionMonster's knowledge that it had not knowingly infringed on Delicious Monster's logo, and the fact that Delicious Monster and OptionMonster sell different goods and services and have no customer overlap, confirmed OptionMonster's position that there was no infringement, trademark or otherwise, in this instance.

8.    Based on its investigation, OptionMonster had no reason to believe any infringement had occurred, and the only thing that could change that position would have been some evidence to the contrary from Delicious Monster.  However, counsel for Delicious Monster, Rebecca Ashbaugh, had previously indicated in an email dated February 6, 2008 to Mr. Lavender that Delicious Monster was not interested in OptionMonster's response if it included a request for further documents or defenses to the infringement claims.  (*See* Exhibit B.)

9.    Nonetheless, on February 7, 2008, I responded to Delicious Monster's cease and desist letter, setting forth the factual and legal bases for OptionMonster's position that no infringement had occurred and requesting any additional information that Delicious Monster may have that supported its claims of trademark and copyright infringement.  (Exhibit C.)  This letter was sent by email and facsimile that same date.

10.    Delicious Monster never indicated a willingness or desire to provide additional documentation to myself or any other attorney in my firm prior to or after my February 7, 2008 letter.

11.    I telephoned Ms. Ashbaugh on Friday, February 8, 2008, and left a voicemail message asking Ms. Ashbaugh to call her to discuss OptionMonster's response to Delicious Monster's cease and desist letter.   Ms. Ashbaugh did not return that call on the Friday when it was left, or any time thereafter (either prior to or following the filing of OptionMonster's Complaint).  Nor did Ms. Ashbaugh ever respond in writing to OptionMonster's February 7, 2008 letter.

12.    Following the filing of OptionMonster's Complaint and related papers on February 12, 2008, I emailed courtesy copies of the same to Ms. Ashbaugh explaining that

pressing business issues and Delicious Monster's lack of response forced OptionMonster to proceed with this filing. (Exhibit D.) I again invited further negotiations between the parties in an effort to resolve the dispute short of proceeding with the litigation. (*Id.*)

13.    Ms. Ashbaugh never responded to my February 12, 2008 email. Later that same day, I sent Ms. Ashbaugh filed stamped copies of the Complaint and related papers. (Exhibit E.) Ms. Ashbaugh made no response to this email either.

14.    It was not until February 26, 2008, that Ms. Ashbaugh made any contact with counsel for OptionMonster regarding this matter. (Exhibit F.) Ms. Ashbaugh responded to my email dated February 25, 2008, enclosing the court's notice regarding the voluntary Lanham Act mediation program, indicating only that her client had not been formally served at that date. Ms. Ashbaugh did not seek to re-open negotiations and did not inform me that Delicious Monster had filed its own Complaint in the Western District of Washington three days prior, on February 22, 2008.

15.    The first knowledge that I or OptionMonster had of the filing of the Complaint by Delicious Monster in the Western District of Washington was when we received the present Motion. OptionMonster has not been properly served in that action and has not agreed to waive service of process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of April 2008, in Chicago, Illinois.

/s/ Caroline C. Plater<br>CAROLINE C. PLATER

# Exhibit A

COLUMBIA CENTER | 701 FIFTH AVE. | SUITE 4400 | SEATTLE, WA 98104
T. 206.386.5900 | F. 206.344.7400 | WWW.LAWASRESULTS.COM

REBECCA S. ASHBAUGH
BASHBAUGH@LAWASRESULTS.COM

# Stanislaw Ashbaugh
LAW AS RESULTS

February 1, 2008

VIA EMAIL AND FIRST CLASS MAIL

Timothy R. Lavender
OPTIONMONSTER HOLDINGS, INC.
OPTIONMONSTER MEDIA, LLC
175 W Jackson Blvd, Suite 200
Chicago, IL 60604

RE:    OptionMonster's Trademark and Copyright Infringement

Dear Mr. Lavender:

This firm represents Delicious Monster Software, LLC ("Delicious Monster"). I am writing in regard to the creature logo that appears on optionMONSTER's website, which is a clear copy of my client's creature logo. Delicious Monster demands that you immediately stop using the creature logo on your website and all other corporate materials.

Delicious Monster's creature logo was custom created in 2004 specifically for Delicious Monster by Christopher Masciocchi, a famous graphic artist. Since 2004, Delicious Monster has been continuously using this logo to identify its products and services. The creature logo is protected under copyright and trademark laws. My client's logo can be viewed at www.delicious-monster.com.

OptionMONSTER is presently and has been infringing my client's legal rights to its logo. The creature used by optionMONSTER is likely to cause confusion among consumers and the image is nearly identical to that of Delicious Monster's fanciful logo. Making minor changes or additions of little substance to a pre-existing work does not qualify the work as a new creation.

On behalf of Delicious Monster, I demand that you immediately remove the offending mark from your website and all corporate materials and cease using it to represent your company in any way. Please send me written confirmation that:

  (1) You have removed the creature logo from your website;
  (2) You have stopped using the creature logo, or any derivative thereof, in association with any of your goods or services; and
  (3) You will not at any time in the future use the creature logo, or any derivative thereof, in association with any of your goods or services.

Timothy R. Lavender
February 1, 2008
Page 2

We look forward to resolving this dispute amicably and without resort to further legal action. However, if I have not received your written confirmation by February 6, 2008, Delicious Monster may be forced to file a lawsuit against you for copyright and trademark infringement and ask for its damages. I look forward to your timely response.

Sincerely,

Rebecca S. Ashbaugh

# Exhibit B

**Lavender Timothy R.**

---

**From:**   Tim Lavender [trlavender@comcast.net]
**Sent:**   Wednesday, February 06, 2008 6:41 PM
**To:**     Lavender Timothy R.
**Subject:** FW: Calls


Tim Lavender
Cell: (312) 401 - 2119

-----Original Message-----
**From:** Becki Ashbaugh [mailto:BAshbaugh@lawasresults.com]
**Sent:** Wednesday, February 06, 2008 5:57 PM
**To:** Tim Lavender
**Subject:** RE: Calls

Mr. Lavender:

I'm assuming your email was sent before our conversation of today's date. During our conversation, you indicated that you will be sending me a letter tomorrow in response to my initial letter regarding optionMonster's trademark and copyright infringement. I would hope that your letter does not simply request information from my client but rather responds to my letter and provides the requested written confirmation or sets forth the grounds, if any, on which optionMonster is defending its infringement.

As you stated on the phone, optionMonster is planning on expanding its products and services in the near future to include downloads and obviously the channels of commerce delivering our clients' goods and services are identical. During our conversation you stated that your client's logo was based on the green, one-eyed monster from the Pixar movies Monsters, Inc. The optionMonster logo looks nothing like that creature. Rather, by comparing our clients' logos, it is obvious optionMonster's creature is a copy of my client's.

My client is very invested in its creature as it has spent substantial time and money developing this logo. Delicious Monster is a very famous company in the software and internet community and uses the creature logo to identify its services and products. The logo is very important to my client and it is committed to defending and protecting its rights. I look forward to your response and hope to resolve these issues as soon as possible. If you would like to discuss any of these issues further, please give me a call.

Sincerely,
Becki Ashbaugh

**REBECCA S. ASHBAUGH | LAWYER**

COLUMBIA CENTER | 701 FIFTH AVE | SUITE 4400 | SEATTLE, WA 98104
T. 206.386.5900 | F. 206.344.7400

WWW.LAWASRESULTS.COM

CONFIDENTIALITY: If you have received this email in error please reply to me and delete your copy immediately as this email may contain attorney-client privileged and/or confidential information which should not be reproduced or distributed in any way.

NOTE: This communication is not intended or written by Stanislaw Ashbaugh LLP to be used, and it may not be used by you or any other person or entity, for the purpose of (1) avoiding any penalties that may be imposed on you or any other person or entity under the United States Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein. This notice is issued pursuant to Treasury Department Circular 230.

---

4/8/2008

**From:** Tim Lavender [mailto:trlavender@comcast.net]
**Sent:** Wednesday, February 06, 2008 3:18 PM
**To:** Becki Ashbaugh
**Cc:** 'Timothy Lavender'
**Subject:** Calls

Ms. Ashbaugh – I have been trying to contact you to discuss you letter. To adequately respond my client and I need more information from you and your client. I also believe a better understanding of each of our client's business will help frame the issues and a possible amicable resolution to this controversy.  Please try to contact me on my cell as Chicago is in the middle of yet another snow storm.

Tim Lavender
Cell: (312) 401 - 2119

# Exhibit C

### KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ
———
BRUSSELS, BELGIUM
———
AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2501

EMAIL: cplater@kelleydrye.com

February 7, 2008

**VIA FACSIMILE & VIA E-MAIL**

Rebecca S. Ashbaugh
Stanislaw Ashbaugh
Columbia Center
701 Fifth Avenue, Suite 4400
Seattle, WA 98104

   Re: *OptionMonster Holdings, Inc.'s Response to Delicious Monster Cease and*
*Desist Letter*

Dear Ms. Ashbaugh:

   This will serve as OptionMonster Holdings, Inc.'s ("OptionMonster") response to
points raised by you in your letter dated February 1, 2008 and email dated February 6, 2008, both
addressed to Timothy Lavender of my firm.

   First, we dispute and deny your allegations of trademark and copyright
infringement with regard to the creature logo that appears on OptionMonster's website, as
compared to the logo used by your client. We continue to investigate these claims.

   Second, though you have cautioned Mr. Lavender that you would like a
substantive response to your letter and not merely a request for information from your client, we
simply cannot provide a complete and substantive response without requesting some additional
information from your client. Specifically, we request evidence of all federal trademark and
copyright registrations, applications, notices, intent to use applications or assignments of the
same, as well as evidence of first use, regarding your client's creature logo. Currently, we have
found nothing to suggest that your client has any federal trademark or copyright protection for
the creature logo and therefore we must have some further support for your claims of priority.

   Third, a search of the USPTO trademark and copyright registries shows that
OptionMonster filed its registration application for its design and words on August 17, 2006,
prior to your client's filing of its registration of its written trademarks - which did not include

KELLEY DRYE & WARREN LLP

Rebecca Ashbaugh
February 7, 2008
Page Two

any design featuring your client's creature logo.  A proper search of the USPTO registries at the time of your client's trademark filings should have revealed the OptionMonster design that is in dispute.  Yet, your client did nothing about it until last week.

Fourth, the identical "channels of commerce" that you claim our clients' deliver their goods and/or services (referenced in your email) appears to refer to the fact that both of our clients provide products and/or services via the internet.  Given the extraordinarily broad scope of the internet, the fact that both our clients have websites on the internet is not a relevant criteria for purposes of any infringement analysis.  As you are well aware, our respective clients do not sell or offer the same or similar class or type of services and/or products via the internet.  Simply put, we are in different businesses altogether.

Fifth, given the separate and distinct businesses of our clients and given that this is not a store shelf situation, the likelihood of any meaningful consumer confusion is slim.  For example, a customer looking for your client's products and/or services who mistakenly arrives at OptionMonster's website will not be a lost customer for your client because we do not offer the same or any remotely similar products or services.  Any initial confusion that any customer could possibly experience is readily corrected upon reading the first line of text on the website.  You mentioned to Mr. Lavender that you have evidence of actual consumer confusion.  Please provide more details regarding this claim.

We look forward to resolving this dispute amicably.  However, we are unable to provide a thorough evaluation of your claims without the further information requested herein. Please feel free to contact me or Mr. Lavender if you wish to discuss this matter further.

Sincerely,

Caroline C. Plater

CCP:ccp

CH01/PLATC/227821.1

# Exhibit D

**Plater, Caroline C.**

| | |
|---|---|
| **From:** | Plater, Caroline C. |
| **Sent:** | Tuesday, February 12, 2008 10:37 AM |
| **To:** | 'BAshbaugh@lawasresults.com' |
| **Cc:** | Lavender Timothy R. |
| **Subject:** | OptionMonster/Delicious Monster |

Ms. Ashbaugh,
Enclosed please find a copy of the complaint and related documents which we filed today relating to your client's infringement claims. We tried to reach out to you several times last week in an effort to resolve this matter - and we continue to be open to negotiations. In the absence of any response from you as of today's date and due to the need to address this matter in the most expedient fashion, we filed the enclosed Declaratory Judgment Action in the District Court for the Northern District of Illinois. Please note that it does not have a case number assigned to it yet. That will be generated by the electronic filing system within the next 24 hours. When I receive that, I will forward it to you.
Please feel free to contact me regarding this matter.
Regards, Carrie Plater

Untitled        Untitled

Caroline C. Plater
Kelley Drye & Warren LLP
333 W. Wacker, Suite 2600
Chicago, IL 60606
312.857.2501 (direct)
312.857.7095 (fax)

# Exhibit E

## Plater, Caroline C.

| | |
|---|---|
| **From:** | Plater, Caroline C. |
| **Sent:** | Tuesday, February 12, 2008 5:19 PM |
| **To:** | bashbaugh@lawasresults.com |
| **Cc:** | Lavender Timothy R. |
| **Subject:** | FW: New E-Case Info: OptionMonster v. Delicious Monster |

Ms. Ashbaugh, Enclosed please find the file stamped copies of the complaint and related documents filed today.
Regards, Carrie Plater

# Exhibit F

**Plater, Caroline C.**

| | |
|---|---|
| **From:** | Becki Ashbaugh [BAshbaugh@lawasresults.com] |
| **Sent:** | Tuesday, February 26, 2008 2:29 PM |
| **To:** | Plater, Caroline C. |
| **Subject:** | RE: OptionMonster/Delicious Monster - fed. ct. mediation program notice |

Ms. Plater,

Thank you for your e-mail.  I will pass it on to my client.

To be sure the record is clear, Delicious Monster has not been properly served with the summons and complaint in this matter.  I am not authorized to accept service on Delicious Monster's behalf, and as such have not signed an acceptance of service form.  Similarly, Delicious Monster has not been personally served.  While we will be representing Delicious Monster, and I do appreciate you providing me with courtesy copies of the materials, you still need to effectuate service.

Additionally, contrary to your prior assertion, you did not reach out to me in an effort to resolve this matter.  Rather, you sent me a letter in response to my cease and desist letter to Mr. Lavender in which you disputed and denied that OptionMonster was committing copyright and trademark infringement, you stated that OptionMonster's investigation with respect to Delicious Monster's infringement claims was continuing, and you requested additional information from Delicious Monster that you alleged was necessary to evaluate the claims.  Then, without waiting for my reply or any additional information, OptionMonster filed a complaint for declaratory judgment in Illinois.

Sincerely,
Becki Ashbaugh

---

**From:** Plater, Caroline C. [mailto:CPlater@KelleyDrye.com]
**Sent:** Monday, February 25, 2008 1:51 PM
**To:** Becki Ashbaugh
**Subject:** OptionMonste/Delicious Monster - fed. ct. mediation program notice

Ms. Ashbaugh, I am enclosing the notice I recently received from the court regarding participation in the voluntary Lanham Act mediation program with regard to the above-referenced pending action.  Though your firm does not have an appearance on file at this time, from your prior involvement in these issues, I am assuming that you are acting as counsel in this mater and thus am obligated to provide you with this information.  In turn, you should provide the same to your client.  If I am in error in sending this to you, please let me know to whom I should direct it.
Thanks, Carrie Plater

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this comm
stated, is not intended and cannot be used for the purpose of avoiding tax-related p

The information contained in this E-mail message is privileged, confidential, and ma
please be aware that any other use, printing, copying, disclosure or dissemination o
subject to legal restriction or sanction. If you think that you have received this E
error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believ
other defect that might affect any computer system into which it is received and ope
responsibility of the recipient to ensure that it is virus free and no responsibilit
Drye & Warren LLP for any loss or damage arising in any way from its use.

Message

# EXHIBIT 2

CH01/LUZAM/218591.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTIONMONSTER HOLDINGS, INC.,

        Plaintiff,

v.

DELICIOUS MONSTER, LLC,

        Defendant.

No. 08 cv 894

Honorable Ronald A. Guzman

## **DECLARATION OF DIRK MUELLER-INGRAND**

I, Dirk Mueller-Ingrand, declare as follows:

1.     I am CEO of OptionMonster Holdings, Inc. ("OptionMonster"), Plaintiff in the above-captioned action. I have held this position at all relevant times to this litigation. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called upon to testify thereto, could and would competently do so.

2.     OptionMonster is a financial firm founded in August, 2005. Through OptionMonster's website (located at www.optionmonster.com), OptionMonster provides investors with a fast, easy-to-use Internet site designed to meet their requirements for news, market research, and information on stocks and options.

3.     OptionMonster's website contains links to news from around the world, including information and specific tools for stocks and options, research, and education which allows users to quickly and efficiently access any type of financial information from the Internet from hundreds of websites.

4.    OptionMonster has been using the mark OPTIONMONSTER in the online media business since early 2006.

5.    OptionMonster filed for a trademark registration of its OptionMonster monster logo on August 17, 2006 and was issued an allowance on January 15, 2008.  OptionMonster has been using its monster logo on its website and related business materials continuously since 2006.

6.    OptionMonster has over twenty-five trademark and copyright applications and/or registrations, including the monster logo trademark registrations, with the USPTO for trademarks and copyrighted materials used in association with OptionMonster's website and business in general.

7.    Delicious Monster and OptionMonster do not operate remotely the same businesses or cater to the same customers.  I know this based on my knowledge of OptionMonster's business and customers and based on a review of Delicious Monster's website.

8.    According to its website, Delicious Monster offers computer software for creating a searchable online catalogue of information relating to physical items, which may be downloaded from a global computer network.

9.    As the date of filing the Complaint, February 12, 2008, Delicious Monster had been threatening OptionMonster with legal action for months, and had done nothing about it.  At that particular time, OptionMonster was in the process of developing two websites for OptionMonster.  The first website, planned to re-launch in April 2008, was of the existing website that had undergone major upgrades and the other website, planned to launch in August 2008, was an entirely new website.  OptionMonster had already determined the budgets and development schedules for those websites as of February 1, 2008.  OptionMonster needed to

have a definitive plan in place regarding the logo to be used on its websites prior to the launch of these two new major Internet websites for OptionMonster.

10.     OptionMonster has already expended hundreds of thousands of dollars for website development, designs, indirect costs, marketing and advertising that integrate and use its monster logo, and is committed to making rapidly increasing expenditures in the expansion of its website and services.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of April 2008, in Chicago, Illinois.


/s/ Dirk Mueller-Ingrand
DIRK MUELLER-INGRAND